## BROWN v. FELSEN

No. 78–58.   Argued February 21, 1979—Decided June 4, 1979

BLACKMUN, J., delivered the opinion for a unanimous Court.

*Craig A. Christensen* argued the cause for petitioner.   With him on the briefs was *Deanna E. Hickman.*

*Alex Stephen Keller* argued the cause and filed a brief for respondent.

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

The issue here is whether a bankruptcy court may consider evidence extrinsic to the judgment and record of a prior

state suit when determining whether a debt previously reduced to judgment is dischargeable under § 17 of the Bankruptcy Act, 11 U. S. C. § 35.

I

Petitioner G. Garvin Brown III was a guarantor for respondent Mark Paul Felsen and Felsen's car dealership, Le Mans Motors, Inc. Petitioner's guarantee secured a bank loan that financed the dealership's trading in Lotus, Ferrari, and Lamborghini automobiles. In 1975, the lender brought a collection suit against petitioner, respondent, and Le Mans in Colorado state court. Petitioner filed an answer to the bank's complaint, and a cross-claim against respondent and Le Mans. The answer and the cross-claim, by incorporating the answer, alleged that respondent and Le Mans induced petitioner to sign the guarantee "by misrepresentations and non-disclosures of material facts." App. 35. The suit was settled by a stipulation. It provided that the bank should recover jointly and severally against all three defendants, and that petitioner should have judgment against respondent and Le Mans. Neither the stipulation nor the resulting judgment indicated the cause of action on which respondent's liability to petitioner was based. Because the case was settled, respondent's sworn deposition was never made part of the court record.

A short time later, respondent filed a petition for voluntary bankruptcy and sought to have his debt to petitioner discharged. Through discharge, the Bankruptcy Act provides "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt," *Local Loan Co.* v. *Hunt,* 292 U. S. 234, 244 (1934). By seeking discharge, however, respondent placed the rectitude of his prior dealings squarely in issue, for, as the Court has noted, the Act limits that opportunity to the "honest but unfortunate debtor." *Ibid.* Section 14 of the Act, 11 U. S. C. § 32, specifies that a *debtor* may not obtain

a discharge if he has committed certain crimes or offenses. Section 17a, the focus of this case, provides that certain *types* of debts are not affected by a discharge. These include, under § 17a (2), "liabilities for obtaining money or property by false pretenses or false representations . . . or for willful and malicious conversion of the property of another" and, under § 17a (4), debts that "were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."[1]

In the bankruptcy court, petitioner sought to establish that respondent's debt to petitioner was not dischargeable. Petitioner alleged that the guarantee debt was the product of respondent's fraud, deceit, and malicious conversion and so came within §§ 17a (2) and 17a (4). Petitioner contended that respondent had prepared false title certificates, sold automobiles out of trust, and applied the proceeds to private purposes. Respondent answered and moved for summary judgment. Respondent said that the prior state-court proceeding did not result in a finding of fraud, and contended that res judicata barred relitigation of the nature of respondent's debt to petitioner, even though the application of § 17 had not been in issue in the prior proceeding.

Before 1970, such res judicata claims were seldom heard in federal court. Traditionally, the bankruptcy court determined whether the debtor merited a discharge under § 14, but left the dischargeability under § 17 of a particular debt to the court in which the creditor sued, after bankruptcy, to enforce his prior judgment. Typically, that court was a state court. In 1970, however, Congress altered § 17 to require creditors to apply to the bankruptcy court for adjudication

---

[1] In 1978, Congress repealed the Bankruptcy Act, effective October 1, 1979. See Bankruptcy Reform Act of 1978, Pub. L. 95–598, § 401 (a), 92 Stat. 2682. A case commenced under the Bankruptcy Act continues to be governed by it. § 403 (a), 92 Stat. 2683. Discharge provisions substantially similar to § 17 of the Bankruptcy Act appear in § 523 of the new law. 11 U. S. C. App. § 523 (1976 ed., Supp. II).

of certain dischargeability questions, including those arising under §§ 17a (2) and 17a (4).[2]  In *In re Nicholas,* 510 F. 2d 160, cert. denied, 421 U. S. 1012 (1975), the United States Court of Appeals for the Tenth Circuit, confronting for the first time the res judicata question presented here, resolved it by holding that, in determining the dischargeability of a claim previously reduced to judgment, the District Court had properly limited its review to the record and judgment in the prior state-court proceeding.  The Court of Appeals found that its decision accorded with the majority rule among state courts previously considering the question.

The bankruptcy court here, bound by *Nicholas,* somewhat reluctantly [3] confined its consideration to the judgment, pleadings, exhibits, and stipulation which were in the state-court record.  It declined to hear other evidence, and it refused to consider respondent's deposition that had never been made part of that record.  The court concluded that, because neither the judgment nor the record showed that petitioner's allegation of misrepresentation was the basis for the judgment on the cross-claim against respondent, the liability had not been shown to be within §§ 17a (2) and 17a (4).  The court granted summary judgment for respondent and held that the debt was dischargeable.  App. 44–48.

Both the United States District Court for the District of Colorado, *id.,* at 49, and the United States Court of Appeals for the Tenth Circuit affirmed.  In an unpublished opinion, the Court of Appeals followed *Nicholas,* applied res judicata, and said that the prior consent decree was conclusive as to the nature of respondent's liability.  The court noted that neither the stipulation nor the judgment mentioned fraud, and the

---

[2] See Pub. L. 91–467, §§ 5–7, 84 Stat. 992; H. R. Rep. No. 91–1502 (1970); S. Rep. No. 91–1173 (1970).

[3] The court observed that, in its experience, the *Nicholas* rule had "created more difficulties and more problems than it has solved."  Tr. in No. 76 B 56 (Colo., Dec. 14, 1976), p. 13.

court said that petitioner had not even met the state requirement that fraud be pleaded with specificity. See Colo. Rule Civ. Proc. 9 (b). The court agreed that respondent's debt was dischargeable. App. 50–56.

Since *Nicholas* was decided, every other Court of Appeals that has considered the question has rejected res judicata and held that extrinsic evidence may be admitted in order to determine accurately the dischargeability under § 17 of a debt previously reduced to judgment in state court.[4] We granted certiorari to resolve this conflict. 439 U. S. 925 (1978).

## II

Res judicata ensures the finality of decisions. Under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana* v. *United States,* 440 U. S. 147, 153 (1979). Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Chicot County Drainage Dist.* v. *Baxter State Bank,* 308 U. S. 371, 378 (1940); 1B J. Moore, Federal Practice ¶ 0.405 [1] (2d ed. 1974). Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

Bankruptcy often breeds litigation, and respondent contends that the policy of repose which underlies res judicata

---

[4] See *In re Wright,* 584 F. 2d 83, 84 (CA5 1978); *In re McMillan,* 579 F. 2d 289, 293, and n. 6 (CA3 1978); *In re Houtman,* 568 F. 2d 651, 653–654 (CA9 1978); *In re Pigge,* 539 F. 2d 369, 371–372 (CA4 1976).

Two Circuits held that extrinsic evidence was admissible under pre-1970 law. See *Martin* v. *Rosenbaum,* 329 F. 2d 817, 820 (CA9 1964); *In re Johnson,* 323 F. 2d 574 (CA3 1963). But cf. *Chernick* v. *United States,* 492 F. 2d 1349, 1351, and n. 4 (CA7 1974) (bound by prior post-bankruptcy judgment). This Court, in dictum, indicated that extrinsic evidence could be admitted in a proceeding under the 1867 Bankruptcy Act. *Strang* v. *Bradner,* 114 U. S. 555, 560–561 (1885).

has particular force here. Respondent argues that petitioner chose not to press the question of fraud in the state-court proceeding even though an adjudication of fraud would have entitled petitioner to extraordinary remedies such as exemplary damages and body execution.[5] Respondent says that because petitioner did not obtain a stipulation concerning fraud in the prior state-court proceeding, he is now barred from litigating matters that could have been concluded in the consent judgment. See *United States* v. *Armour & Co.*, 402 U. S. 673, 681–682 (1971). Applying res judicata in bankruptcy court, it is argued, prevents a creditor from raising as an afterthought claims so insubstantial that they had previously been overlooked. In respondent's view, res judicata stops harassment and promotes the orderly processes of justice by encouraging the consolidation of the entire dispute between debtor and creditor into one prior proceeding.

Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked only after careful inquiry. Petitioner contends, and we agree, that here careful inquiry reveals that neither the interests served by res judicata, the process of orderly adjudication in state courts, nor the policies of the Bankruptcy Act would be well served by foreclosing petitioner from submitting additional evidence to prove his case.

## A

Respondent's res judicata claim is unlike those customarily entertained by the courts. For example, this case is readily distinguishable from *Chicot County Drainage Dist.* v. *Baxter*

---

[5] In Colorado, body execution is a statutory remedy which, under certain circumstances, permits a creditor to have a tortious judgment debtor imprisoned at the creditor's expense. See *Hershey* v. *People*, 91 Colo. 113, 12 P. 2d 345 (1932); Colo. Rev. Stat. § 13–59–103 (1973).

*State Bank, supra.* There, bondholders participated in a federal statutory proceeding for the readjustment of indebtedness and a judgment was entered. After parties from another State succeeded in having the statute declared unconstitutional, the bondholders brought a suit seeking to collect the sums that had been due before readjustment. The Court held that res judicata barred the second suit and said that the bondholders "were not the less bound by the decree" because they failed to raise the constitutional claim in the first proceeding. 308 U. S., at 375.

Here, in contrast, petitioner readily concedes that the prior decree is binding. That is the cornerstone of his claim. He does not assert a new ground for recovery, nor does he attack the validity of the prior judgment. Rather, what he is attempting to meet here is the new defense of bankruptcy which respondent has interposed between petitioner and the sum determined to be due him. A substantial minority of state-court decisions, particularly those following *Fidelity & Casualty Co.* v. *Golombosky,* 133 Conn. 317, 322–324, 50 A. 2d 817, 819–820 (1946) (Maltbie, C. J.), have recognized this distinction and have refused to apply res judicata in determining the dischargeability of debts previously reduced to judgment.[6] Respondent has upset the repose that would

---

[6] See *United States Credit Bureau* v. *Manning,* 147 Cal. App. 2d 558, 562, 305 P. 2d 970, 973 (2d Dist. 1957); *Welsh* v. *Old Dominion Bank,* 229 A. 2d 455, 456 (D. C. App. 1967); *Levin* v. *Singer,* 227 Md. 47, 57–60, 175 A. 2d 423, 428–430 (1961); *Fireman's Fund Indemnity Co.* v. *Caruso,* 252 Minn. 435, 439–441, 90 N. W. 2d 302, 305–306 (1958); *Durrett* v. *Smith,* 358 S. W. 2d 261, 263 (Mo. App. 1962). The *Golombosky* case has been applauded by the commentators. See J. MacLachlan, Bankruptcy 111 (1956); Note, Fraudulent Financial Statements and Section 17 of the Bankruptcy Act—The Creditor's Dilemma, 1967 Utah L. Rev. 281, 288–290, 296; Developments in the Law—Res Judicata, 65 Harv. L. Rev. 818, 885 (1952); Comment, 60 Harv. L. Rev. 638 (1947); Comment, 33 Va. L. Rev. 508 (1947). Cf. 8 H. Remington, Bankruptcy Law 186 (6th ed. 1955) (contrary decisions are sound only

justify treating the prior state-court proceeding as final, and it would hardly promote confidence in judgments to prevent petitioner from meeting respondent's new initiative.

### B

Respondent contends that the § 17 questions raised here, or similar issues of state law, could have been considered in the prior state-court proceeding and therefore are not "new." Respondent argues that the state-court collection suit is the appropriate forum for resolving all debtor-creditor disputes, including those concerning dischargeability. While in some circumstances the consolidation of proceedings may be desirable, here consolidation would undercut a statutory policy in favor of resolving § 17 questions in bankruptcy court, and would force state courts to decide these questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them. See *In re Pigge*, 539 F. 2d 369, 371–372 (CA4 1976).

1. Considerations material to discharge are irrelevant to the ordinary collection proceeding. The creditor sues on the

---

when applied to the "typical 'afterthought' and harassment case"). But see Note, 21 J. Nat. Assn. of Referees in Bankruptcy 94 (1947).

Other States, however, continued to apply res judicata and refused to admit additional evidence. See *Miller* v. *Rush*, 155 Colo. 178, 188, 393 P. 2d 565, 571 (1964); *Security National Bank* v. *Boccio*, 60 Misc. 2d 547, 548, 303 N. Y. S. 2d 610, 611 (Nassau Cty. 1969); *Universal C. I. T. Credit Corp.* v. *Woodmansee*, 213 Tenn. 429, 437, 374 S. W. 2d 386, 390 (1964); *Beehive State Bank* v. *Buntine*, 17 Utah 2d 351, 352, 411 P. 2d 967, 968 (1966); *Northey* v. *Vandermark*, 66 Wash. 2d 173, 176, 401 P. 2d 873, 875–876 (1965).

The state decisions predating *Golombosky* are close to unanimity in adhering to res judicata. See *Aetna Casualty & Surety Co.* v. *Sentilles*, 160 So. 149, 151 (La. App. 1935); *Rice* v. *Guider*, 275 Mich. 14, 18, 265 N. W. 777, 778 (1936); *Ehnes* v. *Generazzo*, 19 N. J. Misc. 393, 396, 20 A. 2d 513, 515 (Com. Pl. 1941); *Scott* v. *Corn*, 19 S. W. 2d 412, 415 (Tex. Civ. App. 1929), cert. denied, 281 U. S. 736 (1930); Annot., 170 A. L. R. 368 (1947). But see *Gehlen* v. *Patterson*, 83 N. H. 328, 331, 141 A. 914, 916 (1928).

instrument which created the debt. Even if an issue similar to those created by § 17 should arise, the state-law concept is likely to differ from that adopted in the federal statute. See 1A J. Moore, J. Mulder, & R. Oglebay, Collier on Bankruptcy ¶ 17.16 [6], p. 1650.1 (14th ed. 1978). For example, in *Davis* v. *Aetna Acceptance Co.*, 293 U. S. 328 (1934), the Court held that a mere technical conversion by a bankrupt dealer in automobiles was not "willful and malicious" within the meaning of § 17 by virtue of being actionable under state law, nor was a misappropriation of funds, held pursuant to a "trust receipt," a breach of an express trust sufficient to constitute an act done "as an officer or in any fiduciary capacity."

When § 17 issues are not identical to those arising under state law, the parties have little incentive to litigate them. In the collection suit, the debtor's bankruptcy is still hypothetical. The rule proposed by respondent would force an otherwise unwilling party to try § 17 questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future. In many cases, such litigation would prove, in the end, to have been entirely unnecessary, and it is not surprising that at least one state court has expressly refused to embroil itself in an advisory adjudication of this kind. See *Pioneer Finance & Thrift Co.* v. *Powell*, 21 Utah 2d 201, 204, 443 P. 2d 389, 391 (1968). And absent trial on the merits, there is no particular reason to favor extraneous facts thrown into a record for § 17 purposes over facts adduced before the bankruptcy court.

2. If a state court should expressly rule on § 17 questions, then giving finality to those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court. The 1970 amendments eliminated post-bankruptcy state-court collection suits as a means of resolving certain § 17 dischargeability questions. In those suits, creditors had taken advantage of debtors who were unable to retain counsel because bankruptcy had stripped them of their

assets. Congress' primary purpose was to stop that abuse. A secondary purpose, however, was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them.[7] By the express terms of the Constitution, bankruptcy law is federal law, U. S. Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the amendment described the bankruptcy court's jurisdiction over these § 17 claims as "exclusive." S. Rep. No. 91–1173, p. 2 (1970). While Congress did not expressly confront the problem created by prebankruptcy state-court adjudications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these § 17 questions away from bankruptcy courts and forces them back into state courts. See *In re McMillan*, 579 F. 2d 289, 293 (CA3 1978); *In re Houtman*, 568 F. 2d 651, 654 (CA9 1978); *In re Pigge*, 539 F. 2d, at 371; 1 D. Cowans, Brankruptcy Law and Practice

---

[7] See S. Rep. No. 91–1173, pp. 2–3 (1970); H. R. Rep. No. 91–1502, p. 1 (1970). A statement by Professor Lawrence King, prepared for the National Bankruptcy Conference, included in both the House and Senate Reports and placed in the Congressional Record by Representative Wiggins, said:

"One of the strongest arguments in support of the bill is that, if the bill is passed, a single court, to wit, the bankruptcy court, will be able to pass upon the question of dischargeability of a particular claim and it will be able to develop an expertise in resolving the problem in particular cases. The State court judges, however capable they may be, do not have enough cases to acquire sufficient experience to enable them to develop this expertise. Moreover, even under the present system, in the last analysis, it is the U. S. Supreme Court which has the ultimate word on the construction of section 17 of the Bankruptcy Act. . . . Since this is a Federal statute, the Federal courts necessarily have the final word as to the meaning of any terms contained therein." S. Rep. No. 91–1173, p. 9 (1970); H. R. Rep. No. 91–1502, p. 8 (1970); 116 Cong. Rec. 34819 (1970).

See also S. Rep. No. 91–1173, p. 6 (1970) (letter of Royal E. Jackson, Chief, Division of Bankruptcy, quoting Prof. Charles Seligson).

§ 253, p. 298 (1978). Compare 1A J. Moore, J. Mulder, & R. Oglebay, Collier on Bankruptcy ¶ 17.16 [6], p. 1650.1 n. 50 (14th ed. 1978) (1970 Act), with *id.*, ¶ 17.16 [4], p. 1643 (prior state law).

Respondent argues that petitioner could have avoided such a result and preserved his dischargeability contentions for bankruptcy court review by bargaining for a stipulation that § 17 issues were not resolved by the consent judgment. It makes little sense, however, to resolve a federal dischargeability question according to whether or not the parties in state court waived their right to engage in hypothetical litigation in an inappropriate forum.

3. Respondent also contends that petitioner had an adequate incentive to prove state-law fraud, which might have entailed proof identical to that required by § 17. Petitioner, however, rejected whatever lure exemplary damages and body execution may have provided. That rejection does not conclusively show that petitioner thought respondent was innocent of fraud. Petitioner may have thought those remedies would not be advantageous to him.[8] While respondent is certainly entitled to claim that res judicata would bar further pursuit of those extraordinary remedies in state court, their hypothetical desirability provides no basis for preventing

---

[8] So long as a debtor is solvent, the debtor and creditor alike may prefer a simple contract suit to complex tort litigation. Default and consent judgments are common in collection proceedings. For the creditor, the prospect of increased attorney's fees and the likelihood of driving the debtor into bankruptcy may offset the advantages of exemplary damages or other extraordinary remedies. Bankruptcy deprives the debtor of his creditworthiness and so impairs his ability to repay. In the words of a Shakespearean creditor, fearing the worst:

"When every feather sticks in his own wing,
Which Timon will be left a naked Gull,
Which flashes now a Phoenix." Timon of Athens, Act 2, Scene 1, in VII The Works of Shakespeare 294 (Henley ed. 1903).

Nor does body execution aid in the collection of a debt if the debtor needs to be out of jail in order to earn the money to repay the debt.

petitioner from recovering on the debt, the remedy he elected from the beginning.

## C

Refusing to apply res judicata here would permit the bankruptcy court to make an accurate determination whether respondent in fact committed the deceit, fraud, and malicious conversion which petitioner alleges. These questions are now, for the first time, squarely in issue. They are the type of question Congress intended that the bankruptcy court would resolve. That court can weigh all the evidence, and it can also take into account whether or not petitioner's failure to press these allegations at an earlier time betrays a weakness in his case on the merits.

Some indication that Congress intended the fullest possible inquiry arises from the history of § 17. In the 1898 Bankruptcy Act, Congress provided that only "judgments" sounding in fraud would be excepted from a bankrupt's discharge. 30 Stat. 550. In 1903, Congress substituted "liabilities" for "judgments." 32 Stat. 798. The amendment, said the accompanying House Report, was "in the interest of justice and honest dealing and honest conduct," and it was intended "to exclude beyond peradventure certain liabilities growing out of offenses against good morals." [9] This broad language suggests that all debts arising out of conduct specified in § 17 should be excepted from discharge and the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt. Cf. *Hargadine-McKittrick Dry Goods Co.* v. *Hudson,* 111 F. 361, 362–363 (ED Mo. 1901), aff'd, 122 F. 232, 235–236 (CA8 1903) (comparing 1903 Act to prior law).

In sum, we reject respondent's contention that res judicata applies here and we hold that the bankruptcy court is not confined to a review of the judgment and record in the prior

---

[9] H. R. Rep. No. 1698, 57th Cong., 1st Sess., 3, 6 (1902). See 36 Cong. Rec. 1375 (1903).

state-court proceedings when considering the dischargeability of respondent's debt. Adopting the rule respondent urges would take § 17 issues out of bankruptcy courts well suited to adjudicate them, and force those issues onto state courts concerned with other matters, all for the sake of a repose the bankrupt has long since abandoned.[10]   This we decline to do.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

---

[10] This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. *Montana* v. *United States*, 440 U. S. 147, 153 (1979); *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322, 326 n. 5 (1979); *Cromwell* v. *County of Sac*, 94 U. S. 351, 352–353 (1877). If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral-estoppel effect to a prior state judgment. In another context, the Court has held that a bankruptcy court should give collateral-estoppel effect to a prior decision. *Heiser* v. *Woodruff*, 327 U. S. 726, 736 (1946). The 1970 amendments to the Bankruptcy Act, however, have been interpreted by some commentators to permit a contrary result. See 1A J. Moore, J. Mulder, & R. Oglebay, Collier on Bankruptcy § 17.16 [6], p. 1650.2 (14th ed. 1978); Countryman, The New Dischargeability Law, 45 Am. Bankr. L. J. 1, 49–50 (1971). But see 1 D. Cowans, Bankruptcy Law and Practice § 253 (1978).