**In re Thomas Marcel LaCASSE d/b/a Tom's Truck and Tractor Service, Debtor.**

**Andrew F. MASLOSKI, Plaintiff,**

**v.**

**Thomas Marcel LaCASSE d/b/a Tom's Truck and Tractor Service, Defendant.**

**Bankruptcy No. 3–82–1163.
Adv. No. 82–401.**

United States Bankruptcy Court, D. Minnesota.

March 8, 1983.

William Schutter, Babcock, Locher, Neilson & Manella, Blaine, Minn., for plaintiff.

Joseph E. Marvin, Anoka, Minn., for defendant.

ROBERT J. KRESSEL, Bankruptcy Judge.

Now, upon all of the files, records and proceedings, the following Memorandum Decision, incorporating Findings of Fact and Conclusions of Law, is made and entered, pursuant to Bankruptcy Rule 752.

On June 17, 1982, defendant filed a voluntary petition under Chapter 7 of Title 11. The petition seeks, inter alia, discharge of an indebtedness which is evidenced by a judgment entered in the District Court, County of Chisago, Tenth Judicial District, State of Minnesota, in a case entitled *Andrew F. Masloski v. Thomas LaCasse.* Plaintiff filed a Complaint to determine the dischargeability of that debt.

On April 4, 1975 at approximately 3:00 p.m., defendant repeatedly discharged his Browning automatic shotgun into a parked camper owned by the plaintiff. On May 14, 1975, the defendant pled guilty to violation of Minnesota Statute 609.595(1) Aggravated criminal damage to property, which states: "Whoever *intentionally* causes damage to physical property of another without the latter's consent, may be sentenced to imprisonment for not more than five years or to payment of a fine . . ." (emphasis added).

On March 29, 1978, plaintiff commenced an action against defendant in Chisago County District Court seeking compensatory damages of $25,000 for damage to and destruction of personal property caused by the negligent. or intentional discharge of a firearm.

The defendant interposed an Answer and Amended Answer. The latter alleged, *inter alia,* "as and for an affirmative defense, defendant states that at all times mentioned in plaintiff's Complaint, defendant was not mentally competent and not liable for his actions."

The action came to trial on May 10, 1979. The jury returned a special verdict as follows:

"We the Jury in the above entitled matter, Hereby Find:

(1) That the defendant intentionally discharged a firearm into the personal property of the plaintiff;

(2) We assess the damages in the amount of $6,210.00."

The trial court adopted the verdict of the jury as its Findings of Fact and Conclusions of Law, and judgment was entered accordingly. Subsequently, the trial court responded to a motion for additure by assessing damages at $11,000.00; judgment was entered October 25, 1979.

I

Bankruptcy Rule 756 adopted Rule 56(c), the summary judgment rule of the Federal Rules of Civil Procedure to be applied in adversary proceedings. Summary judgment is appropriately granted to a moving party when it has been shown that there is no genuine issue as to any material fact after examination of the record. The rule

allows for effective and efficient use of court time by serving as a sieve through which fictitious or vexatious fact issues can be filtered, leaving only genuine substantive fact issues for the trier of fact to resolve.

■ In determining whether to grant a motion for summary judgment, the Court must examine the evidence to determine whether a material fact issue exists. The party seeking the judgment has the burden of demonstrating the absence of any genuine issue of material fact even when the evidence is viewed in the light most favorable to the opposing party. If the record discloses that there is a possibility of genuine issue of material fact, the motion must be denied. Because of the serious effects of granting a summary judgment, courts are generally reluctant to grant such relief. However, in the appropriate cases, it is granted.

## II

Plaintiff's motion for summary judgment is premised on the contention that the doctrine of collateral estoppel bars relitigation of the factual issue of the state court finding of intent; that the defendant's guilty plea is an admission of intent and also collaterally estops further litigation of the issue; and that the state court verdict and the guilty plea satisfies the requisite "willful and malicious injury" standard imposed by 11 U.S.C. § 523(a)(6).

■ The Supreme Court's decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) made clear that bankruptcy courts are not limited by the doctrine of res judicata when determining whether a particular debt is dischargeable. In dicta the Court indicated that collateral estoppel should be applied if the state court's decisions on factual issues were based on standards identical to those used by the bankruptcy court in its determination of dischargeability. Id. at 139 n. 10, 99 S.Ct. at 2213 n. 10. Despite the direction given by the *Brown* dicta, jurisdictions are not uniform in their application of collateral estoppel. Some jurisdictions regard the

congressional grant of exclusive jurisdiction over dischargeability issues to foreclose application of collateral estoppel totally. *In re Houtman*, 568 F.2d 651 (9th Cir.1978); *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980); *In re Cooper*, 17 B.R. 733 (Bkrtcy.D.Md.1982).

Other courts, including this one, have followed the dicta in *Brown* and applied collateral estoppel when the state court standards paralleled the bankruptcy court standards. *Matter of Ross*, 602 F.2d 604 (3rd Cir.1979), *Matter of Merrill*, 594 F.2d 1064 (5th Cir.1980); *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981); *In re Spector*, 22 B.R. 226 (Bkrtcy.N.D.N.Y.1982); *In re Carothers*, 22 B.R. 114 (Bkrtcy.D.Minn.1982); *In re Cook*, 21 B.R. 112 (Bkrtcy.D.N.M.1982). The Eighth Circuit has not yet addressed the issue. Applying collateral estoppel when the standards used by the state court and bankruptcy court are identical is logically consistent with *Brown* and maximizes efficient use of court time.

■ There are basically four criteria which must be met before collateral estoppel can be applied to bar a relitigation of factual issues. The elements are:

(1) The issue sought to be precluded must be the same issue as that involved in the prior action;

(2) The issue must have been actually litigated;

(3) The issue must have been determined by a valid and final judgment, and

(4) The determination of the issue must have been essential to the final judgment.

See *Matter of Supple* 14 B.R. 898, 903 (Bkrtcy.D.Conn.1981) and cases cited therein.

## III

■ The issue in this case is whether the standard used by the trial court in finding the defendant's act of discharging his shotgun to be "intentional" is the same as the "willful and malicious" standard imposed under 11 U.S.C. § 523(a)(6). To reach that

issue first requires a careful analysis of the terms "willful and malicious" as used by the Bankruptcy Code.

Under § 17(a)(8) of the old Bankruptcy Act, liabilities for "willful and malicious" injuries to person or property were nondischargeable. 11 U.S.C. § 35. The Act failed to provide any definitions of the terms "willful and malicious". Most courts interpreted the "willful" requirement to mean that the conduct had been intentional and voluntary. However, the "malicious" standard was not so easily defined. At issue was whether to apply the criminal definition of malice i.e., personal ill will or animosity, or to apply the common law definition: unlawful and wrongful act done intentionally and without justification or excuse. Most courts chose to follow the latter approach, which they felt was bolstered by the Supreme Court decision in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904).

In *Tinker* the Supreme Court decided that a state court judgment against the debtor for damages arising from a criminal conversation with the plaintiff's wife had been based on a willful and malicious injury and was nondischargeable under § 17(a)(2) of the Bankruptcy Act of 1898. The issue faced by the Court was whether the debtor's conduct had been malicious for the purpose of § 17(a)(2). In determining that the conduct had been malicious, the Court concluded that the term "malicious" as used in § 17(a)(2) was to be construed using the common law definition of malice: an unlawful, wrongful, and intentional act done without justification or excuse. Id. at 487, 24 S.Ct. at 509. Although *Tinker* made clear that an act must be both intentional and malicious to be nondischargeable under § 17(a)(2), some courts subsequently used *Tinker* as precedent for finding nondischargeable injuries resulting from "reckless disregard" or "reckless indifference" to the rights of another. *Harrison v. Donnelly*, 153 F.2d 588 (8th Cir.1946).

The oft-quoted legislative history of 523(a)(6) seeking to define the terms "intentional and malicious" states:

"willful" means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473 (24 S.Ct. 505, 48 L.Ed. 754) (1902) (sic), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin.News 1978, p. 6320.

Although several courts have found the few lines in legislative history to be insufficient authority to change the *Tinker* standard (See: *In re Rines*, 18 B.R. 666 (Bkrtcy.M.D. Ga.1982); *In re Askew*, 22 B.R. 641 (Bkrtcy. M.D.Ga.1982); *In re Wyant*, 801192 (N.D. Ind.1981); *In re DeRosa*, 20 B.R. 307 (Bkrtcy.S.D.N.Y.1982); *In re Simmons* 9 B.R. 62 (Bkrtcy.S.D.Fla.1981); and *In re McCloud*, 7 B.R. 819 (Bkrtcy.M.D.Tenn. 1980)), it is at least clear that Congress intended to overrule those decisions that had construed *Tinker* to permit conduct in "reckless disregard" to come within the standard for nondischargeability. To the extent that the *Tinker* definition of "willful" included reckless disregard, this court will not follow it. However, this court is persuaded by the rationale of the cases which continue to apply the *Tinker* definition of "malicious" rather than the more rigid standard requiring an actual and conscious intent to do harm. Therefore, to this court, a wrongful act producing harm done intentionally without just cause or excuse is a willful and malicious injury.

## IV

■ The available record in this case consists of the parties' pleadings, the special verdict, various affidavits of counsel and the defendant, the Judgment Docket, memoranda, and selected trial transcript excerpts. A careful review of these documents reveals no disparity between the standards used in the state court proceedings and those necessary to a finding of "willful and malicious" under 11 U.S.C. § 523(a)(6).

218

Plaintiff's state court action complaint contained two counts, one in negligence and the other alleging intentional acts. The jury verdict made a finding of fact that the defendant acted intentionally in discharging a firearm into plaintiff's personal property. Thus it is clear the act was intentional. It does not escape this court's attention that defendant also pled guilty to a charge of aggravated criminal damage to property, an offense which also required intent. This court, even in the absence of collateral estoppel, would be hard pressed to find that repeated discharge of a shotgun by an adult was not an intentional act.

In order to come within the exception provided by § 523(a)(6) a creditor must also show that the debtor's conduct was malicious. As discussed supra, this court adopts the "unlawful and wrongful act done intentionally without legal justification or excuse" definition of malice. Neither personal animosity nor specific intention to cause damage to the particular person or thing is required. Defendant knew that an injury would be caused by discharging his shotgun into plaintiff's property but yet proceeded in light of such knowledge to carry out the actions which caused the injury. This is sufficient to establish malice.

The debtor submitted an affidavit in this proceeding stating that he often experienced hallucinations such as seeing dead spirits flying around and hearing voices talking to him as the result of a five year drug habit. On the day he shot the plaintiff's vehicle, the face on the barrel of the Browning spoke to him and told him to shoot the bus because "it was in the way." The debtor stated that he could not do anything intentionally or maliciously at that time. However, the debtor admits that his alleged mental problems were not mentioned in either state court proceeding. However, the debtor's answer in state court put his mental capacity in controversy and it is inappropriate to now seek to relitigate that factual question.

Because the debtor's actions were both willful and malicious, the debt at issue comes within the exception provided by § 523(a)(6) and accordingly is not dischargeable. Plaintiff's motion for summary judgment is hereby GRANTED.