In re Duane John FERCHO, Debtor.

Michael J. SKAARER, Plaintiff,

v.

Duane John FERCHO, Defendant.

Bankruptcy No. 83–05575.
Adv. No. 84–7006.

United States Bankruptcy Court,
D. North Dakota.

April 13, 1984.

Colleen J. Saande, Moorhead, Minn., for plaintiff.

David L. Johnson, Fargo, N.D., for defendant.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on the Plaintiff's Motion for Summary Judgment filed on March 12, 1984, alleging that all material facts necessary for a finding of non-dischargeability have been previously established by a North Dakota State Judge's Findings of Fact. The Motion was accompanied by a Brief as required by our local rules. Bankruptcy Local Rule 3, adopted in this District on January 5, 1984, allows the adversary party ten (10) days in which to file a response, the motion thereafter being deemed submitted. Ten days having passed, and no response being filed, the Plaintiff's Motion for Summary Judgment is in posture for resolution.

By Complaint filed January 11, 1984, the Plaintiff, Michael J. Skaarer, alleges that the Debtor, Duane John Fercho, without the authority to do so, and knowing he had no such authority, sold the Plaintiff his distribution rights in a company known as Thermo Products Company. The Plaintiff, allegedly relying on such representations, entered into a contract of sale and in consideration therefore paid the Debtor $25,-000.00. This dispute was litigated between the parties in North Dakota State Court before the Honorable Michael O. McGuire, who on June 14, 1983, rendered detailed Findings of Fact and Conclusions of Law, concluding therein that the Debtor intentionally deceived the Plaintiff which proximately caused him to enter into the contract resulting in the $25,000.00 payment. Judgment was awarded the Plaintiff in the sum of $25,000.00 plus punitive damages of $5,000.00 and costs of $298.65.

On November 10, 1983, the Debtor filed for relief under the Bankruptcy Code, and the instant adversary followed. By his Complaint, the Plaintiff asserts that the amounts awarded in the State Court action are non-dischargeable under section 523(a)(2) and section 523(a)(6) of the Code and that the Findings of the state judge establish all elements necessary for the Bankruptcy Court to reach such a finding. The Debtor generally denies the allegations and suggests that the Bankruptcy Court is not bound by the state court determination.

In determining a summary judgment motion brought pursuant to Rule 7056 of the Bankruptcy Rules of Procedure, the Court must find that there is no genuine issue of material fact, even when viewing the facts in favor of the party against whom judgment is sought. *Luick v. Graybar Electric Company, Inc.,* 473 F.2d 1360 (8th Cir.1973). The Supreme Court of the United States, in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), made it clear that prior state court judgments have no res judicata effect in determining whether a debt is dischargeable in bankruptcy. Although the decision in *Brown* addressed the res judicata question under section 17 of the former Bankruptcy Act, the Supreme Court indicated that discharge provisions of section 523 of the Bankruptcy Code were substantially similar. *Brown,* at p. 129, n. 1, 99 S.Ct. at p. 2208, n. 1. Numerous bankruptcy courts have relied on the decision in *Brown* as authority for denying res judicata effect to state court decisions in determining questions of dischargeability of debts under the Code. *See Stevens v. Rice,* 18 B.R. 562 (Bkrtcy.N.D.Ala.1982); *State Bank of Springhill v. Davis,* 18 B.R. 301 (Bkrtcy.D.Kan.1982); *Burton v. Raposa,*

18 B.R. 448 (Bkrtcy.D.Mass.1982); *Phase I, Inc. v. Black,* 18 B.R. 534 (Bkrtcy.D.N.M. 1982); *Wiese v. Sloan,* 18 B.R. 1021 (Bkrtcy.E.D.N.Y.1982).

■ While the state court judgment may not be res judicata in determining the dischargeability of debts in bankruptcy, the narrower doctrine of collateral estoppel may be applied where the same issues have been actually litigated in state court. This was noted in *Brown v. Felsen,* supra 442 U.S. at p. 139, n. 10, 99 S.Ct. at p. 2213, n. 10:

> This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.... If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of section 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

By the foregoing dicta, the Supreme Court suggested that the doctrine of collateral estoppel might well apply in situations where a state court had decided factual issues identical to those which would pertain to the issue of dischargeability, and a state court in reaching its decision had relied upon the same standards that would be required in Bankruptcy Court. The Supreme Court's pronouncement regarding collateral estoppel has been considered by other courts, and while our own Eighth Circuit has not yet addressed the *Brown* dicta, other circuits have. The leading circuit case on point is *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981) where the court, after a *Brown,* enunciated a standard for application of the doctrine of collateral estoppel. In order for collateral estoppel to apply, said the court, the factual basis for the state court's findings must be clear from the state court records and the standards used in the state court proceedings must clearly be the same as those required

by the Bankruptcy Code. *See also In re Cook,* 21 B.R. 112 (Bkrtcy.D.N.M.1982). Our sister jurisdiction of Minnesota has adopted the *Brown* dicta, and in the recent case of *In re LaCasse,* 28 B.R. 214 (Bkrtcy.D.Minn.1983) it was held that a Rule 56 motion for summary judgment may be premised on the doctrine of collateral estoppel if four criteria are met:

> (1) The issue sought to be precluded must be the same issue as that involved in the prior action;
>
> (2) The issue must have been actually litigated;
>
> (3) The issue must have been determined by a valid and final judgment; and
>
> (4) The determination of the issue must have been essential to the final judgment.

*See also Matter of Supple,* 14 B.R. 898 (Bkrtcy.D.Conn.1981). This Court also at this time adopts the *Brown* dicta and will follow the standards of *In re LaCasse* in considering the present motion for summary judgment.

■ To have a debt declared non-dischargeable under section 523(a)(2) of the Bankruptcy Code, the burden is on the party seeking to have the debt declared non-dischargeable to prove five (5) elements:

> (1) That the debtor made the false representation;
>
> (2) That when the representations were made, the debtor knew them to be false;
>
> (3) That the false representations were made with the intention and purpose of deceiving the creditor;
>
> (4) That the creditor reasonably relied upon the representations; and
>
> (5) That the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Houtman,* 568 F.2d 651 (9th Cir. 1978); *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540 (W.D.Va.1967).

■ To be excepted from discharge under section 523(a)(6) of the Bankruptcy Code, a debt must be one "for wilful and

malicious injury by the debtor to another entity or to the property of another entity." While the wilful and malicious standard of section 523(a)(6) does not require the presence of personal hatred, spite or ill will, there must have been a wrongful act done intentionally, without just cause or excuse, and with the intent to injure another. *See In re Thomas Carlton Hodges*, 4 B.R. 513 (Bkrtcy.W.D.Va.1980); *In re Jesse L. Hawkins, Wanda Hawkins*, 6 B.R. 97 (Bkrtcy. W.D.Ky.1980). The term "malicious" has been further defined to require knowing wrongfulness or knowing disregard of the rights of another. *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916), *Bennett v. W.T. Grant Co.*, 481 F.2d 664 (4th Cir.1973). *See also In re Tanner*, 31 B.R. 338 (Bkrtcy.S.D.Fla.1983). Citing the case of *In re Donny*, 19 B.R. 354 (Bkrtcy.W.D.Wis.1982) holding that an injury is wilful and malicious if the debtor knew that an injury would be caused and proceeded in the face of this knowledge to carry out the actions which would cause such injury. The restatement (second) of torts, section 8a, comment b, is instructive in determining whether such an intent to harm is present, stating:

> All consequences which the actor desires to bring about are intended.... Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness.... As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence....

In view of the foregoing standards, we now turn to the findings of Judge McGuire. A certified copy of Judge McGuire's Findings of Fact, Conclusions of Law and Order for Judgment were submitted to the Bankruptcy Court as part of the Plaintiff's Complaint. The Findings of Fact as set forth by Judge McGuire contain thirty-one (31) separate factual findings, and they are seven (7) pages in length. The Judge's Findings may be summarized as follows:

(1) On January 8, 1982, Duane J. Fercho was bound by a distributorship contract with Thermo Products Company which prohibited him from selling or signing away distribution rights granted to him under said contract without the prior consent of Thermo Products Company.

(2) Fercho knew that he could not sell or transfer any of the rights he held under this distributorship agreement to Skaarer, but Fercho represented to Skaarer that he could do so.

(3) Skaarer did not know what Fercho's distributorship contract consisted of.

(4) Prior to January 1982, Fercho and Skaarer met at Fercho's home and discussed Skaarer's potential purchase of the distributorship rights. The parties reached a tentative agreement for the sale and set the price thereof at $40,000.00 with $25,000.00 to be paid at the time of sale and the remaining $15,000.00 to be paid in installments.

(5) On January 8, 1982, Fercho entered into a contract with Skaarer whereby Fercho sold to Skaarer his rights under the aforementioned distributorship agreement, in consideration for $40,000.00; $25,000.00 to be paid upon execution and $15,000.00 to be paid in installments.

(6) Skaarer paid Fercho $25,000.00 by check which was accepted by Fercho and which had not been returned.

(7) Fercho was an experienced businessman, owning several businesses and was well aware of what the purchase contract between he and Skaarer contained and what it meant. Skaarer, on the other hand, was a carpenter, not sophisticated in the area of business.

(8) Fercho knew that he could not sell or transfer any of his rights under the distributorship agreement to Skaarer but represented to Skaarer that he could do

768

so without the approval of Thermo Products Company.

(9) Fercho insisted that Skaarer not contact Thermo Products Company until the contract had been paid in full, the inference being that Fercho did not wish Skaarer to discover that the manufacturer's approval was necessary in order to accomplish a transfer of the distributorship.

(10) Fercho committed deceit on Skaarer and defrauded him as defined in section 9–10–02 of the North Dakota Century Code by assertion as a fact that which was not true, by one who did not believe it to be true, and further by assertion of that which was not true when he had no reasonable grounds for believing it to be true, and by suppression of certain facts which Fercho was bound to disclose and by misleading Skaarer by making promises without any intention of performing them.

(11) Skaarer was injured or damaged as the proximate result of Fercho's action in the amount of $25,000.00.

The foregoing is an outline of very complete and detailed Findings which led Judge McGuire to conclude by awarding Skaarer punitive damages under section 32–03–07 of the North Dakota Century Code. Punitive damages are available under this section when the defendant has been guilty of oppression, fraud, or malice, actual or presumed.

■ A review of Judge McGuire's complete Findings of Fact and Conclusions of Law leaves this Court with the conclusion that no distinction exists between the standards used by Judge McGuire in arriving at his findings and those which would be used by this Court to find a debt non-dischargeable under section 523(a)(2) and section 523(a)(6). From the state court's Findings, this Court concludes that all elements of section 523(a)(2) and section 523(a)(6) have been met, and there are no material facts remaining to be decided.

Accordingly, the Plaintiff's Motion for Summary Judgment is granted. The debt outstanding in the sum of $30,298.65 owing to the Plaintiff, Michael J. Skaarer, is nondischargeable.

JUDGMENT MAY BE ENTERED ACCORDINGLY.