**In re Gary VANDROVEC and Catherine Vandrovec, Debtors.**

**The UNITED STATES of America, Plaintiff,**

v.

**Gary VANDROVEC, Defendant.**

**Bankruptcy No. 85–05473.**
**Adv. No. 85–7123.**

United States Bankruptcy Court, D. North Dakota.

May 23, 1986.

---

Rodney Webb, U.S. Atty., Fargo, N.D., for plaintiff.

Lowell Bottrell, Fargo, N.D., for debtors.

William P. Westphal, Minneapolis, Minn., U.S. Trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The plaintiff, the United States of America f/b/o Commodity Credit Corporation (C.C.C.), commenced the instant action on December 2, 1985, seeking to have the obligation owing it by the Debtors declared non-dischargeable by virtue of Debtor, Gary Vandrovec's plea of guilty in United States District Court to conversion in violation of 15 U.S.C. § 714m(c) and by virtue of the District Court's Order for restitution. The parties filed a joint stipulation of facts and at trial held on April 4, 1986, additional evidence was received. From the stipulation of facts and trial evidence, the facts as material are as follows:

## FINDINGS OF FACT

The Debtor, Gary Vandrovec (VANDROVEC), entered into Farm Storage Grain Reserve Agreements with C.C.C. in 1981 and 1982 placing a total of 5,469 bushels in storage and extending C.C.C. a security interest in the stored crop. In consequence of the reserve agreements, Vandrovec received storage payments in 1984 totalling $1,050.93 according to the testimony of an A.S.C.S. officer. Sometime prior to June, 1984, Vandrovec sold 2,404.59 bushels of corn contrary to the interests of C.C.C. At the time of sale he was aware of his obli-

gation to C.C.C. and his duty to store the corn. The purchasing elevator was not advised of C.C.C.'s interest and no part of the proceeds were paid to C.C.C. Rather, the proceeds were used by Vandrovec for his 1984 farming expenses. When sold, the corn was moldy and according to Vandrovec's trial testimony he sold it because of its poor condition. Photographs of the corn introduced at trial depict the corn with large brown patches of what appears to be mold. Before selling the corn, Vandrovec sought advice of A.S.C.S. on what to do if the corn was out of condition but apparently never received a response. According to his testimony, Vandrovec never intended to hurt C.C.C. by disposal of the corn. Both he and his wife testified that it was their intent to replace the shortfall with other corn. No replacement was ever made of the corn nor has any payment ever been made to C.C.C. in consequence of the conversion or retained storage payments.

In June, 1985, Vandrovec pled guilty in United States District Court for the District of North Dakota to conversion of grain mortgaged to the Commodity Credit Corporation in violation of 15 U.S.C. § 714m(c). He was placed on two years probation and ordered to make restitution for all corn converted. The parties have stipulated that the restitution sum is $6,732.85 based on 2,409.59 bushels times $2.80 per bushel. The Bankruptcy Court by Order entered January 13, 1986, allowed C.C.C. a set-off for 1985 crop storage payments due of $3,538.81 which further reduced the restitution balance to $3,194.04. In addition to seeking recovery of the restitution ordered amount, C.C.C. seeks to recover additional damages occasioned by the conversion. It seeks interest on the converted corn at the contract loan rate plus refund of storage payments and liquidated damages as specified in the storage agreements. The total additional damages sought in consequence of both agreements are $2,901.87. The total sum which C.C.C. seeks now to have declared non-dischargeable is $6,095.91.

The Debtors filed for relief under Chapter 7 on August 14, 1985.

## CONCLUSIONS OF LAW

The legal premise of C.C.C.'s case is twofold: It asserts, first of all, that the sum representing restitution is non-dischargeable because it is a penalty. Additionally, it is argued that Vandrovec's actions constitute willful and malicious injury within the scope of Section 523(a)(6) and all damages flowing from such actions are non-dischargeable.

### 1.

A discharge in bankruptcy has the effect of discharging a debtor from all debts that arose before the order for relief was entered except as provided in section 523. 11 U.S.C. § 727(b). 11 U.S.C. § 523(a)(7) provides:

"(a) a discharge under section 727, 1141, or 1318(b) of this title does not discharge an individual debtor from any debt—

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss other than a tax, penalty—"

There is a line of case law that in the first instance holds that a criminal restitution obligation is not a debt within the meaning of the Bankruptcy Code. These cases basically are of the opinion that a restitution order arises as a sanction following a criminal conviction and the restitution recipient is, as the crime victim, only an incidental beneficiary of the criminal process. *In re Pellegrino*, 42 B.R. 129 (Bankr.Conn.1984); *In re Johnson*, 32 B.R. 614 (Bankr.Colo.1983); *In re Magnificio*, 21 B.R. 800 (Bankr.Ariz.1982); *In re Button*, 8 B.R. 692 (Bankr.W.D.N.Y.1981). Not being a debt in the first place, the question of whether restitution might be non-dischargeable as a penalty in consequence of section 523(a)(7) is not even reached. The case of *Pellegrino, supra,* additionally held however that even if an order of restitution were regarded as a debt, it would nonetheless be excepted from discharge by operation of section

523(a)(7) because the restitution is an element of criminal penalty intended principally as a means of rehabilitation rather than victim compensation. Recently, the Second Circuit in the case of *In re Robinson*, 776 F.2d 30 (2nd Cir.1985), examined the legal underpinnings of the *Pellegrino* line of cases and concluded that criminal restitution does come within the ambit of the code definition of "debt". Debt is defined in section 101(11) of the code as a liability on a claim. The word "claim", in turn, is defined in section 101(4)(A) as a right to payment. The *Robinson* court after reviewing the legislative history held that these definitions are sufficiently broad—apparently by congressional intent—to include within their meaning any obligation however incurred and any right held by any person or entity to enforce any money obligation. *Robinson* concluded by saying it found no support in the legislative history or statutory scheme as a whole for the *Pellegrino* construction and further held that "any right to the payment of restitution is a claim within the meaning of the code; and if any person or entity has a right to receive a payment of restitution from the bankruptcy debtor, the obligor has a debt within the meaning of the code", *In re Robinson*, 776 F.2d, at 36. In the case at bar, C.C.C. may seek enforcement of the District Court's Order of restitution by simply advising the probation office of non-payment, the effect of which may be a revocation of probation and possible incarceration. The *Robinson* analysis of the meaning of the term "debt", satisfies this Bankruptcy Court that the restitution obligation imposed upon Vandrovec is a debt subject to discharge under section 727 unless subject to a section 523 exception.

■ Although the restitution order may be regarded as a debt and in the nature of penalty for a crime, the amount of the restitution ordered in this case was based upon the number of missing bushels from storage and calculated upon the contract loan rate. Payment was to be made to C.C.C. for restoration of the lost storage. The term, "restitution", according to common legal usage is generally taken to mean

the act of restoring or giving an equivalent for a loss. Citing Black's Law Dictionary (4th ed. 1968), restitution in normal parlance is normally not synonymous with a fine, penalty, or forfeiture. A similar method of restitution calculation in the *Robinson* case led that court to conclude that the restitution obligation was designed to be compensation for actual pecuniary loss and "a debt that has compensation for actual pecuniary loss as at least one of its purposes is not, to the extent that it does not exceed the amount of the loss, excepted from discharge by section 523(a)(7)." Restitution may be non-dischargeable under section 523(a)(7) if its purpose is exclusively to penalize the debtor, but this purpose must be clear from the criminal proceedings. This distinction was recently amplified in the case of *Matter of Zarzynski*, 771 F.2d 304 (7th Cir.1985) where the court noted that the court imposed penalty of paying costs of prosecution did not arise from any debtor-creditor relationship and could not be regarded as having as its purpose, the compensation of a governmental unit for actual pecuniary loss. This distinction has been carried forward in the very recent case of *In re Vohs*, 58 B.R. 323 (Bankr.D.Mont.1986) where a creditor sought to have a state imposed criminal restitution excepted from discharge under section 523(a)(7). The court recognized that if a restitution order's focus is on rehabilitation of the defendant, then it is non-dischargeable even though the sum may equal the debt to the victim. The court noted, however, that there was nothing in evidence indicating that the reason for the judgment of restitution was rehabilitation. From the judgment it appeared to the court that the main purpose was to make the victim whole.

■ In consideration of the foregoing discussion, this Court concludes that the restitution obligation is a debt capable of being discharged by section 727 despite the provisions of 523(a)(7) because it appears to the Court that the principal purpose of the order for restitution was to compensate

C.C.C. for lost corn rather than the rehabilitation of the debtor.

### 2

C.C.C. in its argument goes beyond relying solely upon the order of restitution and asserts that a basis for non-dischargeability under section 523(a)(6) has been proved by the fact of Vandrovec's plea of guilty to criminal conversion. The entire indebtedness, including the restitution may yet be non-dischargeable providing the requisite elements of section 523(a)(6) are established.

■ Section 523(a)(6) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, or 1328(b) does not discharge an individual debtor from any debt—
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity ...

The sale by a debtor of property subject to a security interest without payment of the debt secured thereby may constitute a willful and malicious injury satisfying the requirements of section 523(a)(6). *In re Clark*, 50 B.R. 122 (Bankr.N.D.1985) citing *In re Rebhan*, 45 B.R. 609 (Bankr.S.D.Fla. 1985) and *Webster City Production Credit Ass'n v. Simpson*, 29 B.R. 202 (Bankr.N.D. Iowa 1983). The conversion must be both willful and malicious. One without the other will not support a claim under section 523(a)(6). This proposition has been recognized by this Court and has recently been further buttressed by the Eighth Circuit case of *In re Long*, 774 F.2d 875 (8th Cir.1985) which stated that willfulness and malice as used in section 523(a)(6) are two distinct characteristics which should not be lumped together.

■ The element of willfulness means simply an intentional and deliberate action. *Matter of Langer*, 12 B.R. 957 (Bankr.D.C. N.D.1981) or, as enunciated in *Long, supra* "headstrong and knowing".

■ Maliciousness, however, goes beyond mere willfulness and requires proof that the action was done with the knowledge that it almost certainly would cause harm to the creditor. *Long*, 774 F.2d at 880. Malice requires more than recklessness, it requires a showing that the debtor acted with the knowledge that the creditor's interest would almost certainly be harmed as a consequence of the act. *In re Clark, supra; In re Fercho*, 39 B.R. 764 (Bankr.N.D.1984). A creditor seeking relief under section 523(a)(6) must prove each of the elements of willfulness and maliciousness by a fair preponderence of the evidence. *In re Clark, supra, In re Wightman*, 36 B.R. 246 (Bankr.N.D.1984). The Eighth Circuit in *Long* as well as this court in the *Clark* case recognize that proof of a specific intent to do harm is not required. Rather, the likelihood of harm sufficient to establish malice may be proved by objective evidence.

The evidence before the court on the issue of willfullness and malice consists of the United States District Court Judgment finding Vandrovec guilty of conversion in consequence of his plea of guilty to the charge. In addition, there was rather limited testimony given at the adversary trial.

■ Prior judgments have no *res judicata* effect in determining issues of dischargeability in bankruptcy cases. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). However, the doctrine of collateral estoppel may apply to matters of dischargeability if the following criteria are met:

> (1) the issue sought to be precluded is the same as that involved in the prior action;
> (2) the issue must have been actually litigated
> (3) the issue must have been determined by a valid and final judgment; and
> (4) the determination of the issue must have been essential to the final judgment.

*Brown, supra, In re Fercho, supra, In re LaCasse*, 28 B.R. 214 (Bankr.D.Minn.1983). A plea to a criminal charge resulting in a criminal conviction may work a collateral estoppel in a subsequent civil suit despite the absence of trial. In such cases courts have held that the defendant had a full and

fair opportunity to litigate and had a hearing on the issue of the validity of the guilty plea. *Fontneau v. United States*, 654 F.2d 8 (1st Cir.1981); *Moore v. United States*, 360 F.2d 353 (4th Cir.1965). A guilty plea operates as an admission to every element of the offense. *United States v. Twenty Thousand Seven Hundred*, 769 F.2d 479 (8th Cir.1985). A prior criminal proceeding operates as an estoppel in a later civil proceeding so long as the question involved was distinctly put in issue and determined. *McNally v. Pulitzer Pub. Co.*, 532 F.2d 69 (8th Cir.1976), *United States v. Satterfield*, 743 F.2d 827 (11th Cir.1984). Thus, the requisite elements of collateral estoppel may be met by a plea of guilty providing the charge to which the plea is entered contains the requisite elements of the latter civil proceeding. In the Supreme Court case of *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), the foregoing collateral estoppel principle was recognized but the court did not find it applicable in a subsequent civil action despite the defendant's previous plea of guilty to draft evasion. Citizenship was the issue in the later civil proceeding and the Supreme Court noted that no language in the draft evasion indictment bore on the issue of citizenship, thus, the conviction entailed no actual or necessary finding on the issue of citizenship. The case of *Matter of Esposito*, 44 B.R. 817 (Bankr.S.D.N.Y.1984), is similar in its result. There the debtor was indicted and plead guilty to bank fraud under 18 U.S.C. § 1014. The bank thereafter commenced a section 523(a)(2)(A) action in bankruptcy contending that all elements had been met by virtue of the previous criminal plea and were conclusively established by operation of the doctrine of collateral estoppel. In applying the four-part collateral estoppel test, to a 523(a)(2)(A) action, the bankruptcy court noted that the element of reasonable reliance critical to a section 523(a)(2)(A) was not an element of the criminal offense and not necessary to the conviction. Hence, collateral estoppel could not be applied to all of the section 523(a)(2)(A) elements. In contrast, in the case of *Sunco Sales, Inc. v. Latch*, 58 B.R. 596 (Bankr.D.C.Fla.1986), the court found a jury verdict in a state conversion action was based upon jury instructions containing both the elements of willfulness as well as malice and hence, collateral estoppel was applicable in a later section 523(a)(6) action in bankruptcy. *See generally In re Hanson*, 45 B.R. 60 (Bankr.N.D.1984).

■ Recalling that the elements necessary to prove non-dischargeability under section 523(a)(6) are maliciousness as well as willfulness, reference must now be made to the criminal charge to which Vandrovec plead guilty. 15 U.S.C. § 714m(c) provides:

"whoever shall willfully steal, conceal, remove, dispose of, or convert to his own use or to that of another any property owned or held by, or mortgaged or pledged to, the corporation, or any property mortgaged or pledged as security for any promissory note, or other evidence of indebtedness, which the corporation has guaranteed or is obligated to purchase upon tender, shall upon conviction thereof, [penalty] ..."

This is the only charge Vandrovec plead guilty to and it is the statute upon which he was convicted. Although willfulness is an integral element of 15 U.S.C. § 714m(c), maliciousness is not. Thus, one may be guilty of conversion under 15 U.S.C. § 714m(c) on a lesser standard than is required for non-dischargeability of a debt under section 523(a)(6). Collateral estoppel based upon the previous criminal conviction does operate to establish the element of willfulness, but this Court does not believe in light of the logic of *Kennedy v. Mendoza-Martinez, supra,* that it can operate as regards the element of maliciousness. There is nothing in the record before this court suggesting that maliciousness was ever at issue in the criminal conversion case or that a finding of maliciousness was made by the district judge or indeed even necessary to his acceptance of Vandrovec's guilty plea. All that can be established from the fact of the guilty plea and judgment is that Vandrovec willfully converted the secured grain.

■ The additional evidence produced at the adversary trial does not serve to

establish malice either. Vandrovec was aware of C.C.C.'s interest in the corn and his duty to store it. However, it appears that the overriding consideration in disposing of it was not to harm C.C.C., but rather to market the corn before it became unmarketable due to spoilage. The Court believes that Vandrovec was earnest in his desire to later replace the spoiled corn and that in selling the corn he did not act in conscious knowledge that C.C.C.'s interest would certainly be harmed. The fact that he was concerned about spoilage and inquired of A.S.C.S. on what to do about it, suggests that Vandrovec's concern was directed at salvaging the decaying corn. In summary, there is simply not enough evidence to lead this Court to conclude that Vandrovec, in disposing of the corn, acted with the requisite malice. On this element, C.C.C. fails in its burden of proof.

Accordingly, it is the opinion of the Court that the obligation of Gary and Catherine Vandrovec to the United States of America f/b/o Commodity Credit Corporation is dischargeable and that judgment may be entered in their favor in dismissing the plaintiff's Complaint.

SO ORDERED.