In re Paul E. VRUSHO, Debtor.

Banknorth, N.A. (f/k/a Family
Bank, F.S.B.), Plaintiff,

v.

Paul E. Vrusho, Defendant.

Bankruptcy No. 03–12567–MWV.
Adversary No. 03–1436–MWV.

United States Bankruptcy Court,
D. New Hampshire.

Feb. 23, 2005.

---

David A. Garfunkel, Esq., Jeanne P. Herrick, Esq., Gallagher, Callahan & Gartrell, P.A., for Plaintiff.

William S. Gannon, Esq., William S. Gannon, PLLC, for Defendant.

### *MEMORANDUM OPINION*

MARK W. VAUGHN, Chief Judge.

The Court has before it the motion for summary judgment filed by Banknorth (the "Plaintiff") and the cross motion for summary judgment filed by Paul E. Vrusho (the "Defendant"). The Plaintiff's complaint seeks to except a judgment debt from discharge. Objections were filed to both motions for summary judgment. The Defendant also filed a motion to strike portions of the affidavit of Harry Reitze, to which Plaintiff objected. The Court held a hearing on those three matters on December 22, 2004, and took them under advisement. Previously, on September 21, 2004, the Court held a hearing on the Plaintiff's renewed request for reasonable expenses incurred in obtaining discovery and the Defendant's objection thereto. The Court also took this matter under advisement and ordered the Plaintiff to submit a statement of fees and expenses. For the reasons set out below, 1) the Plaintiff's motion for summary judgment is granted; 2) the Defendant's cross motion for summary judgment is denied; 3) the Defendant's motion to strike is moot; and 4) the Plain-

tiff's expenses, including attorneys' fees, are allowed to the extent of $2,500.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).

### *BACKGROUND*

The Defendant held two accounts with Family Bank, the Plaintiff's predecessor-in-interest (hereinafter "Banknorth" or "Plaintiff"), one personal account in the name of Paul E. Vrusho and one business account in the name of Vrusho Farms. The Defendant also held two business accounts with Granite Bank, one in the name of Johnson's Restaurant and the other in the name of Grand Prix Farms. On November 2, 1998, the Defendant wrote two checks payable to Grand Prix Farms from the Vrusho Farms account, the first in the amount of $49,150 and the second in the amount of $48,100. On the next day, the Defendant wrote two checks, payable to Johnson's Restaurant from the Paul E. Vrusho account, one for $43,950 and the other for $42,400. All four of those checks were deposited with Granite Bank. The Defendant also held an account with the Bank of Nova Scotia in the name of Vrusho Farms from which he wrote two checks on November 4, 1998. The first check in the amount of $97,350 was made payable to Vrusho Farms and the second check in the amount of $86,475 was made payable to Paul E. Vrusho. These checks were deposited into the Vrusho Farms account and the Paul E. Vrusho account at Banknorth. Relying on the Defendant's deposit of these two checks, the Plaintiff paid out on the November 2 and November 3 checks. However, on November 6, 1998, the Bank of Nova Scotia informed

the Plaintiff that the checks would not clear due to lack of funds.

Thereafter, the Plaintiff brought a lawsuit against the Defendant in Merrimack County Superior Court to recover from the losses it suffered as a result of the bounced checks. A judgment against the Defendant was rendered on June 20, 2000. On July 24, 2003, the Defendant filed a Chapter 7 bankruptcy petition with this Court. In his schedules, the Defendant listed the Plaintiff as holding a claim in the amount of $80,000, acknowledging the judgment entered against him.

On October 27, 2003, the Plaintiff filed a Complaint to Determine Dischargeability of a Debt seeking to except from discharge the judgment debt on the grounds that the debt was obtained by false pretenses, false representations and/or actual fraud. The Defendant filed his response objecting to the requested relief. A pretrial conference was held and the discovery deadline was set for June 2, 2004, and subsequently extended to July 2, 2004. On June 16, 2004, the Plaintiff filed a motion to compel discovery and to extend discovery deadlines stating that the Defendant refused to answer interrogatories and respond to the Plaintiff's request for documents, invoking the Fifth Amendment right against self-incrimination. The Defendant did not object to the motion. The Court held a hearing on July 13, 2004, and ordered the Defendant to file his answers to the interrogatories on or before August 13, 2004.

On August 13, 2004, the Defendant provided the Plaintiff with his answers and objections to the Plaintiff's first set of interrogatories. In his answer, invoking his Fifth Amendment privilege again, the Defendant generally objected to providing discovery. On September 2, 2004, the Plaintiff moved for reasonable expenses, including attorneys' fees incurred in preparing and arguing its motion to compel,

and the Defendant opposed. Pursuant to the Court's order dated September 21, 2004, the Plaintiff submitted a statement of fees and expenses on October 1, 2004.

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rodriguez–Pinto v. Tirado–Delgado,* 982 F.2d 34, 38 (1st Cir. 1993) (quoting *United States v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992)). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulge all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

The Court will first consider the Defendant's motion for summary judgment and the Plaintiff's objection thereto. The Defendant alleges that the Plaintiff is attempting to relitigate issues already the subject of the state court judgment and thus, the Plaintiff is barred by the doctrine of res judicata from seeking to except the judgment debt from discharge. The Plaintiff objects, arguing that it had little incen-

tive to pursue fraud claims in state court proceedings when it could obtain judgment based on contract claims. The Court rejects the Defendant's argument and agrees with the Plaintiff. As this Court pointed out in previous opinions, relying on *Brown v. Felsen,* 442 U.S. 127, 132, 99 S.Ct. 2205, 2210, 60 L.Ed.2d 767 (1979), res judicata will not be invoked in a complaint for an exception to discharge since such an action is being raised for the first time in bankruptcy court. *See In re Smith,* 189 B.R. 240 (Bankr.D.N.H.1995); *In re Tracey,* 250 B.R. 468 (Bankr.D.N.H.2000). Without bankruptcy, there is no such claim and thus the claim was not and could not have been brought prior to the bankruptcy. Accordingly, the Defendant's motion for summary judgment is denied.

■ Next, the Court will discuss the Plaintiff's motion for summary judgment, in which the Plaintiff argues that there is no genuine issue of material fact that the debt was obtained by actual fraud. In support of its argument, the Plaintiff alleges that the Defendant engaged in a deliberate plan to deceive the Plaintiff by passing checks between two accounts in two different banks with the knowledge that the Plaintiff would pay out on the Nova Scotia checks. The Plaintiff also alleges that there are several pieces of circumstantial evidence indicating that the Defendant had knowledge that the account at Nova Scotia did not have sufficient funds when he wrote the checks. In his objection to the Plaintiff's motion, the Defendant asserts that the Plaintiff's complaint invokes only § 523(a)(2)(B) as the basis of its claim and that the Plaintiff alleged no

facts to support such a claim based on that statute.

■ The Plaintiff's complaint[1] is brought pursuant to § 523(a)(2)(B). Interestingly, the complaint is titled "Complaint under § 523(c) of the Bankruptcy Code to Determine Dischargeability of a Debt." (Ct. Doc. 1). During the hearing, the Plaintiff concedes that it made a typographical error in citing the wrong section number in the introduction paragraph of its complaint; it meant to allege claims under § 523(a)(2)(A).[2]

■ It is clear that other than in the introductory statement of the complaint, the Plaintiff's complaint pleads the Defendant's fraud based on § 523(a)(2)(A). Paragraph four of the original complaint and paragraph six of the amended complaint state that the Plaintiff seeks relief based on § 523(a) citing the language of § 523(a)(2)(A). Although the Plaintiff inadvertently cited the wrong section number, that error is not fatal. "Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir. 1992) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The only possible interpretation of the documents is that the Plaintiff seeks relief pursuant to § 523(a)(2)(A), therefore, the Court takes judicial notice in that regard.

---

1. The Plaintiff amended its complaint on November 17, 2003, to add certain factual allegations.

2. § 523(a)(2)(A) provides that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an

individual debtor from any debt ... for money ... to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." *See* 11 U.S.C. § 523(a)(2)(A).

■ Turning to the merit of Plaintiff's argument, the Court finds that the Plaintiff failed to establish that the requirements for a § 523(a)(2)(A) claim have been satisfied. In order to establish that a debt is nondischargeable because it was obtained by "false pretense, a false representation, or actual fraud," a creditor must show that 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage. *Palmacci v. Umpierrez,* 121 F.3d 781, 786 (1st Cir.1997). Reading the record in the light most favorable to the Defendant, the record is not sufficient to prove that the Defendant had the requisite scienter, *i.e.* intent to deceive the Plaintiff, when he wrote the Nova Scotia checks and deposited them with the Plaintiff. Since the Plaintiff failed to meet at least one element, the Court need not discuss the other elements.

■■ As a separate ground for its motion for summary judgment, the Plaintiff argues that the Defendant should be barred from seeking discharge of his debt owed to the Plaintiff because he failed to answer interrogatories and failed to produce documents necessary for trial of its complaint. Citing *In re Bartlett,* 162 B.R. 73 (Bankr.D.N.H.1993), the Plaintiff argues that the Defendant is required to produce documents, notwithstanding any incidental incriminating effect of such production. The Defendant counters that the Plaintiff had a full and complete opportunity to conduct discovery in the state court litigation and that the Plaintiff had already completed discovery in that case.

■ When a party to civil actions refuses to provide discovery invoking its Fifth Amendment privilege against self-incrimination, a negative inference may be drawn at the summary judgment stage as well as at trial. *In re Bartlett,* 154 B.R. 827, 830 (Bankr.D.N.H.1993) (*Bartlett I*) (citations omitted). In the case of *Bartlett,* a creditor sought a determination of nondischargeability of its claim, which arose out of a so-called "floor plan" financing arrangement between the creditor and the debtor's car dealership. The creditor alleged that the debtor caused the dealership to retain sale proceeds that should have been paid over to the creditor and used funds intended for the purchase of new cars for other purposes. The creditor argued this amounted to outright fraud, conversion and embezzlement, and willful and malicious injury. In response, the debtor invoked the Fifth Amendment and refused to comply with the creditor's discovery request. Thereafter, the creditor moved for summary judgment requesting the court to draw an adverse or negative inference from the debtor's invocation of his Fifth Amendment privilege against self-incrimination.

The *Bartlett I* court recognized that the drawing of adverse inferences from a person's exercise of his Fifth Amendment privilege is an established principle in civil law. *Id.* However, the court denied the creditor's motion noting that the debtor had provided sufficient evidence—notwithstanding his invocation of his Fifth Amendment privilege—to withstand a summary judgment attack. The court found that the debtor did this primarily by relying on the documents provided by the creditor to show that there are several issues concerning the creditor's conduct and whether or not the creditor condoned the debtor's actions. *Id.* at 829. After the motion for summary judgment was denied, the creditor brought a motion for default judgment

when the debtor persisted in refusing to comply with the discovery requests. The court granted the motion. *See In re Bartlett,* 162 B.R. 73 (Bankr.D.N.H.1993) (*Bartlett II*).

The *Bartlett I* case is distinguished from the proceeding at bar, because in the instant case, the Defendant has failed to provide evidence in any way to respond to the Plaintiff's motion for summary judgment. The Defendant provided the transcript of the deposition taken during the state court proceeding in support of his argument that he did not have any intent to defraud the Plaintiff. However, as explained above, the state court proceeding had nothing to do with the issue of nondischargeability. Thus, the Court finds that the deposition transcript is not admissible evidence for this proceeding. Taking an adverse inference from the Defendant's exercise of his Fifth Amendment privilege, the Court deems all matters to which the Defendant claims the privilege as admitted for purpose of summary disposition.

 Moreover, the *Bartlett II* court made it clear that a debtor cannot enjoy the benefits of the bankruptcy process while avoiding its burdens. "[A] voluntary chapter 7 debtor is required to produce documents necessary to the trial of an objection to the discharge of a particular debt under section 523 of the Bankruptcy Code, notwithstanding any incidental incriminating effect of such production, if said debtor wishes to pursue and obtain the discharge of the debt in question by virtue of his bankruptcy filing." *Bartlett II* at 79. By invoking his Fifth Amendment privilege in refusing to provide information to the Plaintiff, the Defendant chose protection from prosecution over protection from his creditors. *See In re Piperi,* 137 B.R. 644, 647 (Bankr.S.D.Tex. 1991) ("[T]he debtor cannot use the bankruptcy court to broaden the benefits afforded to an accused by the Fifth Amend-

ment."). Therefore, the debt is excepted from discharge, and the Plaintiff's motion for summary judgment is granted.

The Defendant also filed a motion to strike portions of the affidavit of Harry Reitze, which was submitted in support of the Plaintiff's motion for summary judgment. Since the statement of Harry Reitze is not relevant to the Court's ruling on the Plaintiff's motion for summary judgment, that motion becomes moot.

 Finally, the Court finds that sanctions for the Defendant's delay in responding to Plaintiff's discovery request are warranted pursuant to Rule 37 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7037. Rule 37 of the Federal Rules of Civil Procedure states in relevant part:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37. Absent a finding that the opposing party's position was "substantially justified," an award of attorneys' fees and expenses is mandatory to a party who prevails on a motion to compel. *Metrocorps, Inc. v. Eastern Massachusetts Jr. Drum & Bugle Corps Ass'n.,* 912 F.2d 1, 2 (1st Cir.1990). The Plaintiff served inter-

rogatories on the Debtor on April 20, 2004, but the Debtor has not provided his answers to the interrogatories in almost four months without any justifiable reasons. The Defendant's delay unnecessarily increased the cost of litigation in this case. The Court finds that the Defendant's delay was not substantially justified nor do other circumstances make an award of expenses unjust. The Plaintiff requests reimbursement of its expenses of $4,984 incurred in making the motion to compel. The Court orders the Debtor to pay the Plaintiff's attorneys' fees in the amount of $2,500, which the Court finds are reasonable based on the Court's review of the itemization of services rendered.

### CONCLUSION

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgement consistent with this opinion.