**In re Clifford Sanders CLARK; Ruth Marlene Clark, a/k/a R. Marlene Clark, Debtors.**

**The NATIONAL BANK OF AMERICA AT SALINA, Salina, Kansas, Plaintiff,**

v.

**Clifford Sanders CLARK and Ruth Marlene Clark, a/k/a R. Marlene Clark, Defendants.**

Civ. No. 82–1393.
Bankruptcy No. 80–11325.

United States District Court,
D. Kansas.

Nov. 12, 1982.

Aubrey G. Linville, Salina, Kan., for plaintiff.

Robert G. German, Salina, Kan., for defendants.

Gerald Haag, Wichita, Kan., Trustee.

## MEMORANDUM AND ORDER

KELLY, District Judge.

The above-captioned matter is before the Court upon an appeal from a bankruptcy court decision adverse to the bankrupts, Clifford and Ruth Clark. They appeal the bankruptcy court's decision excepting from discharge a debt of $127,173.95 to the National Bank of America, Salina, Kansas, pursuant to 11 U.S.C. § 523(a)(6), for willful and malicious injury to the bank's property. Since this is a factual issue, the bankruptcy court's decision must be upheld unless it is "clearly erroneous." Rule 810. The Court has reviewed counsels' briefs and the transcript from the proceedings below, and counsels' oral argument has been considered. After carefully weighing the merits of the appellants' arguments, this Court finds the decision of the bankruptcy court must be affirmed.

A review of the appellants' arguments regarding the bankruptcy court's factual findings indicates they only disagree with two specific findings. Appellants operated a business entitled Clark's C.B. Distributors, Inc., in Salina, Kansas, through which they sold and serviced 23-channel citizen band radios. On November 29, 1976, Mr. Clark borrowed $235,000.00 from the National Bank of America (the bank). This loan was secured by inventory, contract rights, accounts receivable, and proceeds thereof from the business, and the bank perfected the security interest. The corresponding security agreement contained the following requirement:

Debtor will upon receipt of checks, drafts, cash and other remittances in payment or on account of Debtor's accounts receivable or contract rights or receipt as proceeds of inventory, deposit all of the same in a special bank account maintained with [the bank].... The funds in said account shall be held by [the bank] as security for all loans made hereunder and all other indebtedness of Debtor to [the bank]. Said proceeds shall be deposited in precisely the form received.... Pending such deposits, Debtor agrees

that it will not commingle any such checks, drafts, cash and other remittances with any of Debtor's funds or property, but will hold them separate and apart therefrom, and upon an express trust to [the bank] until deposit thereof is made in the special account.

Pursuant to this clause in the security agreement a special bank account was opened for Clark's C.B. Distributor, Inc. at the bank.

Appellants executed a second mortgage on their business to the bank to provide security for additional loans to the business on June 28, 1977. On July 6, 1977, Mr. Clark, on behalf of the business, executed a new $125,000.00 note with the bank. A renewal note for $225,000.00 was executed by Mrs. Clark, as secretary-treasurer of the business, on April 10, 1978.

Appellants' financial state began disintegrating in July, 1978. The suspected catalyst for the demise of appellants' business occurred sometime in 1977, when the Federal Communications Commission decided 23-channel citizen band radios would be replaced in 1978 by 40-channel units, and that thereafter 23-channel radios could not be sold. This apparently caused appellants to liquidate a large inventory of obsolete radios at below profit prices. Regardless of the cause for the commercial failure, the Clarks became fearful the bank would "freeze" their business account due to an expected default.

On July 7, 1978, Mrs. Clark went to a branch office of the bank and withdrew $20,000.00 from its special business account and deposited the money in a personal account at another Salina bank. Before this date the appellants and their accountant met regularly with the bank officer in charge of their loan, Mr. Dick Renfro, to discuss their business situation. However, he was not consulted before this withdrawal was made and did not approve it afterwards. This money was later deposited in a separate business account of the Clarks at the Citizens State Bank in Geneseo, Kansas. Mrs. Clark testified she knowingly violated the bank's security agreement, although she never intended to harm the bank's position, and she further stated this money was only used for the operational expenses of the business.

Subsequent to the withdrawal, on July 9 and 20, 1978, the Clarks' business defaulted on its two notes with the bank. Thereafter, they refused to surrender the bank's collateral, and on August 8, 1978, the bank filed a state district court action to foreclose on the secured property. On this date the bank obtained a temporary restraining order prohibiting the Clarks and their business from:

> ... selling, encumbering or otherwise disposing of [the bank's] security interest in the inventory, accounts receivable, contract rights, furniture and equipment, now owned or hereafter acquired, except in the ordinary course of business, and from making any payments to any creditors on behalf of Clark's C.B. Distributor, Inc. except for normal periodic payments for rent, utilities, taxes, insurance, mortgage payments and regular payroll, without [the bank's] prior written approval.... *All receipts from the sale of [the bank's] security interest and collections of accounts receivable and contract rights of Clark's C.B. Distributor, Inc. must be deposited in the National Bank of America* ....

(Emphasis supplied). At this point the Clarks' first disagreement with the bankruptcy court's factual findings arises. The bankruptcy court found that the Clarks were bound by the above restraining order, which they received August 10, 1978, even though they testified they were unaware of its ramifications. The bankruptcy court noted the Clarks discussed the restraining order with their attorney three days after receiving it, and they also discussed it with a bank officer shortly thereafter. Despite the temporary restraining order, the Clarks continued to deposit payments on accounts receivable in and pay general creditors through their business checking account at the Citizens State Bank at Geneseo.

Between August 14 and September 16, 1978, the appellants paid $41,567.04 to credi-

tors of their business, other than the bank, from their personal checking account at the Planters State Bank in Salina. They also sent a memo to their debtors asking them to pay all accounts to them personally, because they were changing banks. Mr. Clark filed articles of incorporation for a new business, Clark's TV and CB, Inc., on September 22, 1978. At this point Mr. and Mrs. Clark began working for the new business.

On October 3, 1978, Mr. and Mrs. Clark confessed judgment on the two bank notes on behalf of themselves and Clark's C.B. Distributor, Inc. A journal entry of foreclosure was filed on that day, and the Clarks agreed to surrender the secured property for commercially reasonable disposition. At this point the appellants' second disagreement with the bankruptcy court's factual findings arises. The Clarks contend the bank's cooperation with them in the liquidation of the business assets indicates an acquiescence or assent to the debtors' actions through July, August and September, 1978, with respect to the bank's collateral. However, appellants do not point to any evidence in the record that the bank was ever consulted before Mrs. Clark withdrew the $20,000.00 on July 7, 1978, nor is there evidence the bank acquiesced in the appellants' violations of the security agreement and temporary restraining order. The bankruptcy court found the bank never assented to the debtors' actions impairing their collateral, and this decision is obviously not "clearly erroneous." The bank cannot be faulted for utilizing the Clarks' knowledge of the CB business to liquidate the assets, since both sides had an interest in maximizing receipts from the liquidation sales.

After all assets had been sold, the Clarks still owed the bank, and it obtained a deficiency judgment on September 19, 1979, for $258,481.79. The Clarks' voluntary Chapter VII bankruptcy petition was filed August 25, 1980.

The bankruptcy court excepted $127,173.95 from the $258,481.79 based on two figures. The debtors' accountant prepared an exhibit indicating $76,084.95 of sale proceeds from secured collateral was deposited in the Citizens State Bank of Geneseo, and that $51,089.00 of sale proceeds of secured property was deposited in the Planters State Bank of Salina. The bankruptcy court determined that these two amounts of money should have been deposited by the Clarks in the special account at the National Bank of America pursuant to the security agreement and/or the state district court restraining order. Furthermore, the bankruptcy court found this was done to deprive the bank of control over proceeds and its setoff rights, and that these actions were willful and malicious.

The bankruptcy court correctly noted the doctrine of *res judicata* did not bar it from considering evidence extrinsic to the judgment and record of the state district court case against the Clarks when determining whether the Clarks' debt should be excepted from discharge. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Although the Supreme Court in this case left open the question of whether collateral estoppel would apply where the prior state court litigation actually involved identical factual issues, this principle is not applicable to the case at bar since the issue of conversion was never raised in the bank's state court action against the Clarks. Although *Brown v. Felsen* involved application of the pre-1978 statute on nondischargeable debts, this case still controls. *Spilman v. Harley,* 656 F.2d 224, 226–27 (6th Cir.1981) (en banc).

The bankruptcy court applied "clear and convincing evidence" as the standard of proof for determining whether appellants willfully and maliciously injured the bank's property. This standard has been required in bankruptcy cases where a creditor argued its debt should be excepted from discharge because of fraud. *See, e.g., Brown v. Buchanan,* 419 F.Supp. 199 (E.D.Va. 1975); *In Re Pommerer,* 10 B.R. 935, 939 (Bkrtcy.Minn.1981). However, this Court has been unable to find cases where this stiffer standard applied to cases where a bankruptcy creditor argued a debtor was guilty of willful and malicious conversion,

which would make the debt nondischargeable under 11 U.S.C. § 523(a)(6). Although the bankruptcy court did not specify whether the appellants committed fraud or conversion, they obviously were not prejudiced by the "clear and convincing evidence" standard applied by the bankruptcy court.

Section 523(a)(6) provides an individual debtor shall not be discharged from any debt due to "willful and malicious injury by the debtor to another entity or to the property of another entity." Consequently, the objecting creditor must show the debtor acted both willfully and maliciously. Not all willful and injurious acts are malicious, and a claim pursuant to § 523(a)(6) founded only on a technical conversion does not make a debt nondischargeable. *In Re Scotella*, 18 B.R. 975 (Bkrtcy.N.D.Ill.1982).

■ In the case at bar, the appellants admitted the willfulness of their violation of security agreement, and they clearly became aware of the requirements of the temporary restraining order eventually and chose to ignore it. Consequently, the issue of the debtors' willfulness is not at issue. This Court is not troubled by the bankruptcy judge's finding that appellants' actions in violation of the security agreement and temporary restraining order were "malicious." The purpose behind the provision in the security agreement requiring a business account at the bank was to give it some control over its security interest. In order to deprive the bank of this control, the appellants deliberately withdrew $20,000.00 from the account at the bank and subsequently stopped depositing receipts from accounts receivable and sales of assets into the National Bank of America's account. Appellants' actions are especially egregious in that not only did they ignore the security agreement, they refused to obey the state district court's temporary restraining order. Both actions obviously injured the bank's property since its deficiency judgment against the appellants was almost $260,-000.00. Furthermore, the National Bank of America was the only secured creditor involved in appellants' bankruptcy, and there was an unusual absence of general unsecured creditors of the debtors' bankruptcy estate.

As the bankruptcy court noted, the Clarks probably did not intend to injure the bank in the long run. Nevertheless, personal hatred or ill will need not be present in order for conduct to be judged "malicious." *In Re Scotella*, 18 B.R. 975 (Bkrtcy.N.D.Ill. 1982); 3 Collier on Bankruptcy ¶ 523.16[3] (15th Ed.1979). Appellants cannot argue the defense of necessity, for they were not motivated to ignore the security agreement and temporary restraining order by a need to raise funds to meet living expenses. *See, e.g., Matter of Donny*, 19 B.R. 354 (Bkrtcy. W.D.Wisc.1982).

Lastly, the bankruptcy court's decision to except from discharge the amount of $127,-173.95, which the bankruptcy court found was diverted from the bank by appellants' willful and malicious acts, was sufficiently supported by accounting records. Substantial justice and equity are not offended by the bankruptcy judge's arrival at this sum, and it is likewise approved.

In conclusion, after a careful review of the record, this Court holds that the bankruptcy judge's findings are amply supported by the record below, and therefore they are not clearly erroneous. The record below fully supports the bankruptcy court's conclusion that the debtors willfully and maliciously intended to injure the National Bank of America and its property, and the amount of $127,173.95 should be excepted from discharge under § 523(a)(6).

IT IS THEREFORE ORDERED that the findings and conclusions of the bankruptcy court be and are affirmed.