**In re L. Rivers DICKERSON, Jr. and Sherryl Dickerson.**

**Deere and Company, Plaintiff,**

v.

**L. Rivers Dickerson, Jr., Defendant.**

**Bankruptcy No. 05–13161–DWH. Adversary No. 05–1214–DWH.**

United States Bankruptcy Court, N.D. Mississippi.

July 2, 2007.

Philip T. Dean, Columbus, MS, for L. Rivers Dickerson, Jr. and Sherryl Dickerson.

R. Spencer Clift, III, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Memphis, TN, for Plaintiff.

*OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion for summary judgment filed by the plaintiff, Deere and Company, ("Deere"); no response to said motion having been filed by the defendant/debtor, L. Rivers Dickerson, Jr., ("Dickerson"); and the court, having considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

II.

Deere submitted the following undisputed facts in support of its motion for summary judgment which are set out verbatim as follows:

1. Rivers and Sherryl Dickerson filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on May 3, 2005. The court set September 13, 2005 as the last day for filing complaints objecting to discharge and for determination of dischargeability of debts.

2. The complaint was therefore timely filed.

3. Deere is a Delaware corporation with its principal place of business in Moline, Illinois.

4. Defendant is an adult, resident citizen of the State of Mississippi, residing at 100 Dickerson Lane, Columbus, Mississippi, and at all times relevant hereto was the president and sole shareholder of Greenline Equipment, Inc., a Mississippi corporation.

5. On August 25, 2003, Greenline filed a voluntary Chapter 11 bankruptcy case styled *In re: Greenline Equipment, Inc.,* Case No. 03–15350–DWH.

6. On February 28, 2005, this court entered an order converting the Chapter 11 case of Greenline to a case under Chapter 7 of the Bankruptcy Code.

7. Deere is a manufacturer of agricultural machinery and equipment and consumer lawn equipment, as well as, items, attachments, and service parts for such equipment ("John Deere products"). It supplies its products for sale through a network of authorized independent dealers.

8. Deere provides wholesale financing to its dealers ("floor plan financing")

to assist in the purchase by dealers of John Deere products. Deere also provides retail financing to customers of its dealers in the purchase of John Deere products.

9. On or about November 30, 1971, defendant formed a Mississippi corporation entitled "Greenline Equipment Company, Inc." Rivers Dickerson is the sole shareholder and president of Greenline. Dickerson formed Greenline to operate a John Deere dealership.

10. Greenline became an authorized dealer of John Deere products in 1971.

11. Greenline sold both agricultural and consumer products under the "John Deere" name at its equipment dealership which was previously located at 2223 Turfline Lane, Columbus, Mississippi.

12. While Greenline had been operating as a dealership prior to 1985, on or about November 6, 1985, Dickerson as the sole shareholder and president of Greenline executed an agreement whereby Deere appointed Greenline as an authorized agricultural dealer.

13. On or about December 6, 1985, Dickerson on behalf of Greenline, entered into a John Deere Consumer Products Dealer Agreement with Deere whereby Greenline served as an authorized dealer of Deere's consumer lawn products.

14. On or about August 28, 1979, Rivers Dickerson and Sherryl Dickerson executed a guarantee agreement in favor of Deere in consideration of Deere's extension of credit to Greenline.

15. Deere provided floor plan financing for new agricultural machinery and equipment, inventory to Greenline as a dealer of John Deere products.

16. Deere also provided financing for used agricultural machinery and equipment, inventory to Greenline as a dealer of John Deere products.

17. Under the Consumer Products Dealer Agreement dated November 6, 1985, Greenline conveyed to Deere a security interest in "Goods" as defined in the consumer products dealer agreement, including, but not limited to utility tractors, compact utility trailers, John Deere merchandise and products and all parts for the foregoing.

18. Deere, on a regular basis, provided defendant the opportunity to purchase additional units of agricultural machinery and equipment to subsidize Greenline's inventory from Deere's "National Bid List." The agricultural equipment consisted of items of agricultural machinery and equipment which had either been surrendered at termination of a lease to Deere or from repossession of financed machinery and equipment from an original purchaser.

19. Greenline was required to make payments to Deere as required by the terms of one or more of the agreements executed by Greenline.

20. On March 2, 2006, a federal grand jury for the Northern District of Mississippi issued a true bill resulting in a ten count indictment against Dickerson in the United States District Court for the Northern District of Mississippi, styled, *United States of America v. Rivers Dickerson*, Criminal No. 1:06CR031–P.

21. Under the terms of the indictment, defendant was charged with ten

counts under which he was alleged to have devised a scheme and artifice to defraud money and property by means of false and fraudulent pretenses, representations, and promises through the use of wire communications and interstate commerce in violation of Title 18, United States Code, § 1343.

22. On March 1, 2007, defendant entered a plea of guilty to each count of the indictment.

23. The defendant did knowingly devise a scheme and artifice to defraud money and property from Deere by means of false and fraudulent pretenses, representations, and promises through the use of wire communications and interstate commerce.

24. Defendant, doing business as Greenline and having a capitalized floor plan financing agreement with Deere whereby Deere provided a line of credit based on the purchase of equipment, would and did cause credit to be provided for equipment and would then sell the equipment. However, following the sale, rather than repay Deere as per the capitalized floor plan agreement, defendant would retain the payment and fraudulently represent by means of wire communication and otherwise that the piece of equipment had been rented to account for its absence.

25. On or about May 9, 2003, defendant did knowingly present and cause to be presented to Deere, a rental agreement for a 4710 Sprayer, product identification no. NO4710X000419, falsely and fraudulently pretending, representing, and promising that Greenline had rented the equipment when, in fact, Greenline had sold the equipment on or about February 25, 2003, and no longer had possession of the vehicle.

26. Defendant did on or about May 16, 2003, knowingly present and cause to be presented to Deere, a rental agreement for a 6700 Sprayer, product identification no. NO6700X008204, falsely and fraudulently pretending, representing, and promising that Greenline had rented the equipment, when, in fact, Greenline had sold the equipment on or about May 6, 2003, and no longer had possession of the vehicle.

27. Defendant did on or about March 24, 2003, knowingly present and cause to be presented to Deere, a rental agreement for a 6700 Sprayer, product identification no. NO6700X008094, falsely and fraudulently pretending, representing, and promising that Greenline had rented the equipment, when, in fact, Greenline had sold the equipment on or about March 21, 2003, and no longer had possession of the vehicle.

28. Defendant did on or about April 23, 2003, knowingly present and cause to be presented to Deere, a rental agreement for a 8310 Tractor, product identification no. RW8310P010896, falsely and fraudulently pretending, representing, and promising that Greenline had rented the equipment, when, in fact, Greenline had sold the equipment on or about March 31, 2003, and no longer had possession of the vehicle.

29. Defendant did on or about February 26, 2003, knowingly present and cause to be presented to

Deere, a rental agreement for a 8320 Tractor, product identification no. RW8320P002596, falsely and fraudulently pretending, representing, and promising that Greenline had rented the equipment, when, in fact, Greenline had sold the equipment on or about February 22, 2003, and no longer had possession of the vehicle.

30. Defendant did on or about March 2, 2003, knowingly present and cause to be presented to Deere, a rental agreement for a 8400 Tractor, product identification no. RW8400P026097, falsely and fraudulently pretending, representing, and promising that Greenline had rented the equipment, when, in fact, Greenline had sold the equipment on or about February 17, 2003, and no longer had possession of the vehicle.

31. Defendant did on or about May 8, 2003, knowingly present and cause to be presented to Deere, a rental agreement for a 8410 Tractor, product identification no. RW8410P015887, falsely and fraudulently pretending, representing, and promising that Greenline had rented the equipment, when, in fact, Greenline had sold the equipment on or about April 28, 2003, and no longer had possession of the vehicle.

32. Defendant did on or about February 28, 2003, knowingly present and cause to be presented to Deere, a rental agreement for a 9200 Tractor, product identification no. RW9200H020161, falsely and fraudulently pretending, representing, and promising that Greenline had rented the equipment, when, in fact, Greenline had sold the equipment on or about February 5, 2003, and no longer had possession of the vehicle.

33. Defendant did on or about November 12, 2002, knowingly present and cause to be presented to Deere, a rental agreement for a 9960 Cotton Picker, product identification no. NO9960X000681, falsely and fraudulently pretending, representing, and promising that Greenline had rented the equipment, when, in fact, Greenline had sold the equipment on or about November 7, 2002, and no longer had possession of the vehicle.

34. Defendant did on or about May 10, 2003, knowingly present and cause to be presented to Deere, a rental agreement for a 8410 Tractor, product identification no. RW8410P004327, falsely and fraudulently pretending, representing, and promising that Greenline had rented the equipment, when, in fact, Greenline had sold the equipment on or about January 18, 2003, and no longer had possession of the vehicle.

35. As of June, 2003, the items of equipment listed in counts one-ten of the indictment had a fair market value of $668,250.00.

36. The purchase of items of equipment listed in counts one-ten of the indictment were financed by Deere to Greenline and its principal, Rivers Dickerson.

37. The proceeds of "sale" by Greenline and its principal, Dickerson, of the equipment listed in counts one-ten were not remitted to Deere and defendant and Greenline have failed to account for the proceeds of those items listed.

38. The balances owing to Deere on the items of farm equipment financed and listed in counts one-ten of the indictment, as of the date of "sale" by Greenline and its principal, Dickerson, total $584,100.33.

This adversary proceeding was commenced by Deere on September 13, 2005, seeking a determination that the indebtedness owed by Dickerson to Deere is a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6).

### III.

As the basis of its motion for summary judgment, Deere asserts that the theories of collateral estoppel and res judicata apply to Dickerson's guilty plea that was entered on March 1, 2007. In addressing these theories, four authorities should be noted:

■ First, the Supreme Court case, *Brown v. Felsen*, 442 U.S. 127, 139 note 10, 99 S.Ct. 2205, 2213 note 10, 60 L.Ed.2d 767 (1979), addressed the issue of applicability of collateral estoppel in a bankruptcy dischargeability action as follows:

> If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of [Section 523 of the present Bankruptcy Code], then collateral estoppel in the absence of countervailing statutory policy, would bar relitigation of those issues in bankruptcy court.
>
> *Id.*

■ Second, in *In re Shuler*, 722 F.2d 1253, 1255 (1984), the Fifth Circuit held that collateral estoppel may be invoked in a dischargeability action, but stated that the bankruptcy court is not bound by the earlier determination and, in fact, retains exclusive jurisdiction to determine the ultimate question of the dischargeability of a debt. In addition, the *Shuler* decision, citing *White v. World Finance of Meridian, Inc.*, 653 F.2d 147, 151 (5th Cir.1981), set forth the following test for applying the doctrine of collateral estoppel:

(i) The issue to be precluded must be identical to that involved in the prior action,

(ii) the issue must have been actually litigated in the prior action, and

(iii) the issue determination in the prior action must have been necessary to the resulting judgment.

*Shuler*, 722 F.2d at 1256 n. 2.

■ Third is the case of *Pancake v. Reliance Insurance Co. (In re Pancake)*, 106 F.3d 1242 (5th Cir.1997). Pancake, a bank loan officer, was accused by Reliance of loaning money to borrowers that he knew to be poor credit risks in exchange for kickbacks. Reliance, a surety for the bank, sued Pancake in state court alleging fraud. Pancake filed an answer which was stricken because he had failed to comply with certain discovery orders. Pancake did not appear at trial and a default judgment was entered against him. When Pancake subsequently filed bankruptcy, Reliance filed its complaint to determine the dischargeability of the default judgment. The bankruptcy court granted summary judgement for Reliance. On appeal, the district court reversed, stating that the default judgment was not entitled to preclusive effect. The Fifth Circuit affirmed the district court, concluding that preclusive effect could not be given to the state court judgment because it was unclear from the record whether or not an evidentiary hearing was held in which Reliance was required to meet its burden of proof. "The only indication that the state court held a hearing comes from the final judgment, in which the court states that it heard 'the evidence and arguments of counsel.' That statement alone does not

establish that Pancake received a full and fair adjudication of the issue of fraud." *Id.* at 1244. The court went on to state that the nature of a default judgment is immaterial for collateral estoppel purposes so long as the record reflects that the evidentiary hearing was conducted, and the plaintiff's burden of proof was met.

> For purposes of collateral estoppel ... the critical inquiry is not directed at the nature of the default judgment, but, rather, one must focus on whether an issue was fully and fairly litigated. Thus, even though Pancake's answer was struck, if Reliance can produce record evidence that the state court conducted a hearing in which Reliance was put to its evidentiary burden, collateral estoppel may be found to be appropriate.

*Id.* at 1245.

■ Fourth is the Fifth Circuit case of *Brazzell v. Adams*, 493 F.2d 489 (5th Cir. 1974). In *Brazzell*, the court addressed the theory of collateral estoppel in stating that "... a fact decided in an earlier suit is conclusively established between ... (the) parties and their privies provided it was necessary to the result of the first suit." *Brazzell*, 493 F.2d at 490. The court pointed out that as a general rule "collateral estoppel applies equally whether the prior criminal adjudication was based on a jury verdict or a guilty plea." *Id.* Coincidentally, Rule 803(22), Federal Rules of Evidence, addresses the admissibility of facts related to a guilty plea by providing that said facts are admissible in evidence as a hearsay exception. As such, the court is of the opinion that the theory of collateral estoppel is applicable to this proceeding.

## IV.

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ..." 11 U.S.C. § 523(a)(2)(A).

■ The Fifth Circuit decision, *In re Mercer*, 246 F.3d 391 (5th Cir.2001), sets forth the standards for establishing non-dischargeability under § 523(a)(2)(A) as follows: the creditor by preponderance of evidence must establish (1) Debtor made a representation; (2) It was knowingly false; (3) It was made with intent to deceive the creditor; (4) Creditor actually and justifiably relied on it; and (5) Creditor sustained a loss as proximate result of its reliance. *Id.* at 403.

■ The litany of facts, recited hereinabove, is not disputed by Dickerson. His plea of guilty to a ten count indictment in the United States District Court for the Northern District of Mississippi meets the requirements of *Mercer*. Dickerson admitted in his plea of guilty that he represented to Deere that particular items of equipment were on rental when, in fact, the same had been sold earlier with Dickerson and/or his company, Greenline Equipment, retaining the proceeds rather than repaying Deere under the Floor Plan Financing Agreement. These representations were knowingly false, and were made with the intent to deceive Deere. Deere actually and justifiably relied on these representations, and sustained a loss as a proximate result of its reliance in the amount of $584,100.33. This loss is a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2).

## V.

Additionally, Deere asserts that Dickerson's failure to account for the proceeds of the sale of the items of equipment consti-

tutes a deliberate conversion of the proceeds in violation of § 523(a)(6) of the Bankruptcy Code. This section excepts from discharge any debt "(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

] The Fifth Circuit has stated that an injury is "willful and malicious" where the debtor's conduct has caused injury according to an objective "substantial certainty" of harm standard or upon a showing that the debtor had a subjective motive to cause harm. *In re Miller*, 156 F.3d 598 (5th Cir.1998). The undisputed facts in this case establish that Dickerson converted the proceeds of the sales of the equipment which were subject to Deere's security interest. Therefore, under the objective "substantial certainty of harm standard," the injury to Deere was also willful and malicious pursuant to 11 U.S.C. § 523(a)(6).

Based on the foregoing analysis, the court is of the opinion that there are no genuine issues of material fact remaining in dispute. Deere is entitled to a judgment as a matter of law, and its motion for summary judgment should be sustained.

A separate order will be entered consistent with this opinion.