[Cite as *Redding v. United States Parachute Assn.*, 2025-Ohio-4631.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| WESLEY J. REDDING, | CASE NO. 2025-G-0010 |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| UNITED STATES PARACHUTE ASSOCIATION, INC., et al., | Trial Court No. 2023 P 000619 |
| Defendants-Appellees. | |

## OPINION AND JUDGMENT ENTRY

Decided: October 6, 2025
Judgment: Affirmed

*Wesley J. Redding*, pro se, 338 Irma Drive, Chardon, OH 44024 (Plaintiff-Appellant).

*Tyler Tarney* and *Nick Gonano*, Gordon Rees Scully Mansukhani, L.L.P., 41 South High Street, Suite 2495, Columbus, OH 43215 (For Defendants-Appellees).

EUGENE A. LUCCI, J.

{¶1} Appellant, Wesley J. Redding ("Redding"), appeals the judgment of the Geauga County Court of Common Pleas granting the motion of appellees, United States Parachute Association, Inc. ("USPA"), et al., for judgment on the pleadings, pursuant to Civ.R. 12(C). Redding also appeals the trial court's judgment awarding USPA sanctions and attorney fees for frivolous conduct in relation to the underlying complaint. We affirm.

{¶2} On December 27, 2021, Redding filed a complaint premised upon his allegation that he was wrongfully denied membership with appellee-USPA. *See Redding v. United States Parachute Assn. Inc.*, Geauga C.P. No. 21P000753 (Dec. 27, 2021) (the

"2021 complaint"). The named defendants and appellees were as follows: USPA, Sherry Butcher, Marcie Anne Smith, AerOhio Skydiving Center, and Cleveland Skydiving Center, Inc. (collectively "defendants" or "appellees"). In his complaint, appellant asserted he was a member of the USPA from March 31, 2004 through June 30, 2021. After his membership expired, on July 2, 2021, he attempted to renew his membership but was denied.

{¶3} Redding's 2021 complaint generally claimed that appellees wrongfully refused to renew his membership, in violation of USPA's Governance Manual, in violation of Ohio law, and in retaliation for filing various complaints with the Federal Aviation Administration ("FAA"). In particular, the complaint asserted the named defendants (1) breached a contract between themselves and Redding; (2) defendants were negligent; (3) defendants engaged in self-dealing, in violation of R.C. 1729.24; (4) defendants violated the Sarbanes-Oxley Act; (5) defendants intentionally interfered with a business interest; (6) defendants breached a duty of good faith and fair dealing; and (7) defendants violated R.C. 4113.52, Ohio's Whistleblower statute. Redding also sought injunctive relief.

{¶4} The named defendants filed a motion to dismiss based upon Civ.R. 12(B)(6). Defendants specifically broke down each claim in Redding's complaint and argued that, viewing the allegations in his favor, no set of facts would entitle him to relief. Redding opposed the motion.

{¶5} In his memorandum in opposition, Redding simply argued that USPA, by permitting him to participate in an appeal of his membership via the *"non-member"* administrative process, defendants were not entitled to argue the Manual was

Case No. 2025-G-0010

inapplicable to the parties' relationship. The trial court converted defendants' motion into a motion for judgment on the pleadings pursuant to Civ.R. 12(C). After considering the parties' relative arguments, the trial court concluded that no genuine issue of material fact existed that would entitle Redding to relief on any of the claims. The complaint was therefore dismissed.

{¶6}    Redding appealed and, in *Redding v. United States Parachute Assn., Inc.*, 2023-Ohio-884 (11th Dist.) ("*Redding I*"), this court affirmed the dismissal of all of Redding's claims except the alleged violation of Ohio's Whistleblower statute. On remand, however, the trial court later dismissed this claim granting the defendants' motion for summary judgment. *See Redding*, Geauga C.P. No. 21P000753, (Dec. 12, 2023) (judgment entry granting defendant's motion for summary judgment). That order was not appealed by Redding.

{¶7}    Instead, on October 17, 2023, Redding filed a second complaint, consisting of a 77-page complaint with an additional 476 pages of exhibits. The suit, *Redding v. United States Parachute Assn., Inc.*, Geauga C.P. No. 23P000619 (Oct. 17, 2023) (the "2023 complaint") was filed against the same defendants as those in Case No. 21P000753. The 2023 complaint alleged: (1) breach of contract; (2) violation of the Sarbanes-Oxley Act; (3) intentional interference with a business interest; (4) self-dealing/R.C. 1729.24 violation; (5) breach of good faith; negligence; and (6) a request for a temporary restraining order and permanent injunction. The complaint therefore made the same claims as the 2021 complaint with the exception of the claim that the defendants violated Ohio's Whistleblower statute. That claim was left out of the 2023 complaint.

{¶8} In the 2023 complaint, Redding acknowledged the 2021 complaint had been dismissed; he stated, however, "this allows the Plaintiff to 're-file' and demonstrate and/or establish his set of facts. This is not a frivolous action and is not meant for delay, harassment, or any other improper purpose . . . Further, Plaintiff has a reasonable cause to bring this action and is not a vexatious litigator. . ."

{¶9} Notwithstanding Redding's statement, his complaint was premised upon the same core facts as the 2021 complaint. In particular, Redding asserted he was a member of USPA from March 31, 2004 through June 30, 2021. *See* 2021 complaint at ¶ 11; 2023 complaint at ¶ 13. Redding stated he threatened and ultimately filed a complaint with the FAA regarding concerns about skydiving activity on the premises of defendant Cleveland Skydiving Center, Inc. *See* 2021 complaint at ¶ 14; 2023 complaint, ¶ 49-53. Redding asserted that on Friday, July 2, 2021, he attempted to renew his USPA membership, which was denied. *See* 2021 complaint at ¶ 21. He later discovered he was "locked-out" of his online membership access. *See* 2021 complaint at ¶ 21; 2023 complaint at ¶ 67. And on July 9, 2021, Redding acknowledged the USPA Executive Director, Albert Berchtold, confirmed the USPA's decision to deny his application for membership was based upon "public content" that "would bring public contempt upon skydivers and USPA." *See* 2021 complaint at ¶ 25; 2023 complaint at ¶ 79.

{¶10} Redding attached multiple documents/exhibits to his 2023 complaint. The facts and substance of the documents related to circumstances and/or communications that occurred prior to the filing of the 2021 complaint. All of the documents, however, related to the same common core of operative facts raised in both the 2021 complaint and the 2023 complaint.

Case No. 2025-G-0010

{¶11} On December 13, 2023, USPA moved for judgment on the pleadings or, in the alternative, summary judgment, and moved for fees pursuant to R.C. 2323.51. The party defendants attached, inter alia, Redding's original December 27, 2021 complaint to his motion (Exhibit 1) as well as this court's July 28, 2023 judgment denying Redding's application for reconsideration of his appeal in *Redding I.* The trial court subsequently granted the motion and dismissed all of Redding's claims. The trial court determined that "[t]he Complaint here is remarkably like that filed by [Redding] in an earlier suit filed in this Court on December 27, 2021 . . . The Complaint filed in the Underlying Case . . . included the same claims, with only minor differences, against the same Defendants, for the same alleged conduct." *Redding*, Geauga C.P. No. 23P000619, 1 (Mar. 7, 2024). The trial court underscored that all of Redding's claims had been fully litigated and therefore Redding's claims were barred by res judicata.

{¶12} Following the entry of dismissal, the trial court held an evidentiary hearing on USPA's request for sanctions. The magistrate issued findings of fact and conclusions of law awarding the defendants $45,419.56 in fees. Redding objected to the magistrate's findings. On March 24, 2025, the trial court overruled Redding's objections and adopted the magistrate's decision. Redding now appeals the judgments of the trial court. Redding assigns five errors for this court's review. His first provides:

{¶13} "The trial court committed prejudicial error by dismissing appellant's complaint per Civ.R. 12(C) due to res judicata."

{¶14} Under this assignment of error, Redding asserts the trial court erred in dismissing his claims based upon res judicata because his claims relate to separate

Case No. 2025-G-0010

factual issues not previously before the court and therefore were not actually litigated. We disagree.

{¶15} Civ.R. 12(C) motions are specifically for resolving questions of law. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 1996-Ohio-459, ¶ 21. In ruling on a Civ.R. 12(C) motion, the court is permitted to consider both the complaint and answer. *Id.* "A court must construe as true all of the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party." (Citation omitted.) *State ex rel. Montgomery v. Purchase Plus Buyer's Group, Inc.*, 2002-Ohio-2014, ¶ 11 (10th Dist.). To grant the motion, the court must find beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Pontious* at ¶ 21. Our review of the appropriateness of judgment on the pleadings is de novo. *Fontbank, Inc. v. CompuServe, Inc.,* 138 Ohio App.3d 801, 807 (10th Dist. 2000).

{¶16} The Supreme Court of Ohio has recognized that although ordinarily res judicata is not a proper basis for dismissal under Civ.R. 12, the trial court may appropriately consider whether res judicata applies when the res judicata defense "does not depend on documents outside the pleadings." *Jones v. Wainwright*, 2020-Ohio-4870, ¶ 5. "It is well established, however, that when a plaintiff attaches exhibits to the complaint and alleges that the attached exhibits establish the claim, the plaintiff invites the court to consider them as part of the complaint." *State ex rel. McCarley v. Dept. of Rehab. & Correction*, 2024-Ohio-2747, ¶ 13. Therefore, a Civ.R. 12(C) motion for judgment on the pleadings may be granted when the determination of res judicata does

not depend on documents outside of the pleadings. *See Carson v. Carrick*, 2019-Ohio-4260 (8th Dist.).

{¶17}  In this matter, Redding attached the original 2021 complaint (Exhibit C3); the judgment entry dismissing his original complaint (Exhibit C5); and the defendants' appellate brief filed in the 2023 appeal. Further, Redding cites to this court's opinion in *Redding I* in his 2023 complaint on multiple occasions. And, prior to asserting his various claims in the complaint underlying this appeal, he incorporates the entirety of his prior representations and allegations by reference. Courts have determined that a trial court may take judicial notice of prior judgments where the pleadings incorporate the same. *Kobal v. Edward Jones Securities*, 2021-Ohio-1088, ¶ 27 (8th Dist.), citing *Hammerschmidt v. Wyant Woods Care Ctr.*, 2000 WL 1875401, *2 (9th Dist. Dec. 27, 2000). Considering the foregoing, we conclude that the various filings in the prior case, as well as this court's prior opinion in *Redding I*, were adequately incorporated into the pleadings, and therefore the trial court did not err in considering them in adjudicating the matter pursuant to Civ.R. 12(C).

{¶18}  "Res judicata ensures the finality of decisions." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). "It bars a party from relitigating the same issue or claim that has already been decided in a final, appealable order or a valid, final judgment in a prior proceeding and could have been raised on appeal in that prior proceeding." (Citations omitted.) *AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of North America*, 2023-Ohio-3097, ¶ 15 "The res judicata doctrine ensures stability of judicial decisions, deters vexatious litigation, and allows courts to resolve other disputes." *Id.*, citing *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990); *Brown* at 131.

Case No. 2025-G-0010

{¶19} One branch of the doctrine of res judicata is known as "claim preclusion." *AJZ's Hauling* at ¶ 16. "Claim preclusion makes '"an existing final judgment or decree between the parties to litigation . . . conclusive as to all claims which were or might have been litigated in a first lawsuit."'" *Lycan v. Cleveland*, 2022-Ohio-4676, ¶ 22, quoting *Natl. Amusements, Inc.* at 62, quoting *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69 (1986). For claim preclusion to apply, the following four elements must be satisfied:

> "(1) [A] prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action."

*Lycan* at ¶ 23, quoting *Hapgood v. Warren*, 127 F.3d. 490, 493 (6th Cir. 1997).

{¶20} Here, in his 2023 complaint, Redding raised identical claims to those he raised in the 2021 complaint. Namely, Redding alleged breach of contract, violation of the Sarbanes-Oxley Act, intentional interference with a business interest, self-dealing, breach of good faith, and negligence. These claims were brought against identical parties. Most importantly, this court, in *Redding I*, 2023-Ohio-884 (11th Dist.), addressed each of these claims fully and that judgment and opinion are final as to those claims. We shall address each in turn.

{¶21} With respect to the breach of contract claim, we first point out that this is directed only at the individual defendant USPA. This court previously drew the same conclusion in *Redding I*. *Id.* at ¶ 12. In that matter, this court determined that Redding was not a member of USPA at the time it decided not to renew his membership. As such, no contract existed between Redding and USPA and, thus, Redding was not entitled to the membership protections set forth in the USPA Governance Manual. Put another way, no

contractual relationship existed at the time USPA denied Redding's request for membership. Specifically:

> The [USPA Governance] Manual draws a distinction between disciplinary actions for members and non-members. The Manual, in discussing non-member potential renewals, points out that "[s]ince it is not possible for USPA to revoke the membership and ratings of a non-current member, the board would need to examine the situation to determine if it would be deemed reasonable to allow the expired member to renew membership and ratings." Art.1, [§] 6.4(F)(3). It is undisputed that, at the time [Redding] sought renewal, he was not a "current member." "To have a valid and enforceable contract there must be an offer by one party and an acceptance of the offer by another." *Huffman v. Kazak Bros., Inc.*, . . . 2002 WL 549858, *4 ([11th Dist.] Apr. 12, 2002). By seeking renewal, [Redding] presented USPA an offer, which was rejected. In light of the factual allegations, [Redding], as a non-member, is not entitled to rely upon USPA's compliance with the Manual as a basis for his claim that he and appellees had some contractual relationship which was breached by USPA's decision not to renew membership. He offered to renew his membership and the offer was rejected. As a matter of law, there was no contract.

*Redding I* at ¶ 15.

{¶22} In this appeal, Redding seems to argue that USPA committed fraud and breached its contract with him when it claimed it did not renew his membership pursuant to Art. 1, § 6.4(F)(3), the non-members provision. Instead, pursuant to conversations he had with USPA Executive Director Albert Berchtold, his membership was actually revoked under a separate section; namely Art. 1 § 6.4(C), which provides: "Any *member* shall be guilty of an offense justifying the imposition of the penalties set forth in USPA Governance Manual 1-§6.4(C) (below) who - . . . Engages in any conduct as a skydiver that a person of reasonable prudence would anticipate as being likely to bring public contempt upon their person, upon skydivers, or upon USPA." (Emphasis added.)

Case No. 2025-G-0010

{¶23} Redding attempts to bolster his position by citing a "disciplinary action" which was included in the March 2022 edition of Parachutist Magazine, a USPA publication. This "article" indicated that in 2021, some six cases resulted in "disciplinary action." One of the "disciplinary actions" involved a revocation of a membership occurred "for repeatedly engaging in conduct that a person of reasonable prudence would anticipate as being likely to bring public contempt upon their person, upon skydivers, or upon USPA." 2023 complaint, Geauga C.P. No. 23P000619, Exhibit A7.

{¶24} According to Redding, the foregoing demonstrates he was a member when USPA declined to renew his membership, and USPA therefore breached its contract with him by not following proper procedures for revoking his membership.

{¶25} The problem with Redding's argument is his acknowledgement that the conversation between him and Mr. Berchtold occurred in July 2021. He filed his original complaint in December 2021. He therefore had the opportunity to raise this argument or claim in his original complaint but failed to do so. *See Lycan*, 2022-Ohio-4676, at ¶ 23 (the claim(s) could have been litigated in the first action). Redding's citation to the magazine article does not impact this conclusion. And, in any event, it is unclear how the article is probative of the issue he raises because his name is not referenced in the article. Even if the article was relevant, Redding's reliance upon it is purely speculative.

{¶26} The breach of contract and alleged fraud are barred by res judicata.

{¶27} Similarly, this court fully addressed Redding's alleged violation of the Sarbanes-Oxley Act. Specifically,

> [The Sarbanes-Oxley] claim is based upon [Redding's] allegation that his purported status as a "whistleblower" caused the USPA (no other named appellees are addressed

Case No. 2025-G-0010

in the complaint) to unlawfully retaliate against him via conspiring to deny him USPA membership.

To set forth a whistleblower claim under the Sarbanes-Oxley Act, a plaintiff must first establish a prima facie case by proving, by a preponderance of the evidence, "that: (1) [he or] she engaged in protected activity; (2) the employer knew that [he or] she engaged in the protected activity; (3) [he or] she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." (Internal citations and footnotes omitted.) *Allen v. Admin. Review Bd.,* 514 F.3d 468, 475-76 (5th Cir. 2008). In order to set forth a cognizable claim under the Sarbanes-Oxley Act, an employer/employee relationship is necessary. *See, e.g., Feldman v. Law Enforcement Associates Corp.*, 752 F.3d 339, 344 (4th Cir. 2014). [Redding] does not allege he was engaged in a protected activity when he filed complaints with the FAA or when he was denied membership. More importantly, however, he does not allege he was ever employed by the USPA. And [Redding] cites to the USPA's whistleblower policy in the manual, which states "[n]o adverse employment action may be taken and retaliation is strictly prohibited . . . against any Covered Person who in good faith reports any Concern . . . . A "Covered Person," pursuant to the manual is an employee of or contractor with the organization. The trial court therefore did not err in denying this claim.

*Redding I*, 2023-Ohio-884, at ¶ 36-37 (11th Dist.).

{¶28} This court thoroughly considered the claim for relief under Sarbanes-Oxley in *Redding I.* It is therefore barred by res judicata.

{¶29} This court also previously addressed and rejected Redding's intentional interference with a business relationship claim. This court previously observed and held:

"The elements of tortious interference with a business relationship are (1) a business relationship, (2) the tortfeasor's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and, (4) damages resulting therefrom." (Citation omitted.) *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, . . . 2002-Ohio-3932, . . . ¶ 23 (3d Dist.)

Case No. 2025-G-0010

In his complaint, [Redding] alleged that he was a past employee/independent contractor at various parachute drop zones, including with Cleveland Skydiving Center. He then claimed that his USPA membership was terminated due to the wrongful actions of appellees. He claimed that he is unable to seek employment in the industry without a USPA membership. [Redding] failed to allege that any appellee had any knowledge of any business relationship he possessed with area drop zones; moreover, although he claimed his membership was terminated by appellees' "wrongful" actions, he does not specifically assert appellees' intentional actions caused a breach of any business relationship of which appellees were, or in particular, USPA was aware. In sum, [Redding] failed to sufficiently plead the tort of intentional interference with a business relationship. The trial court did not err in dismissing this claim.

*Redding I* at ¶ 38-39.

{¶30} The claim of intentional interference with a business relationship is barred by res judicata.

{¶31} Redding's self-dealing claim is similarly barred. In *Redding I*, 2023-Ohio-884, at ¶ 35 (11th Dist.), this court observed:

[Redding] alleged a "self-dealing" claim pursuant to R.C. 1729.24. [Redding] claims that certain appellees sought to exact revenge against him for filing complaints with the FAA. R.C. 1729.24, however, addresses voiding contracts or transactions between a business association and other individuals under certain circumstances. As appellant has no contract with any of the named parties, it is unclear how R.C. 1729.24 is in any way applicable to these facts. The trial court did not err in dismissing this claim.

{¶32} Further, this court determined that no named defendant breached a duty of good faith and fair dealing owed to Redding. *Redding I* at ¶ 40. To establish such a claim, a contract is required. *Id.* Without some cognizable contractual relationship, no such duty is owed. *Id.*

Case No. 2025-G-0010

{¶33} Finally, this court previously addressed Redding's negligence claim. In *Redding I*, this court set forth the elements of a negligence claim. *Id.* at ¶ 33. This court then concluded:

> [Redding] alleged the Manual imposed a legal duty to treat him "in the same manner as all other individual and Group Members." As previously noted, he was not a member at the time he alleged he was harmed. Moreover, as also discussed above, USPA followed the manual for denying [Redding's] requested renewal. In this regard, he was actually treated, pursuant to the [M]anual, as any other non-member might be treated. The trial court therefore did not err in dismissing the negligence claim.

*Id.* at ¶ 34.

{¶34} The negligence claim is also barred by res judicata.

{¶35} As noted previously, all factual allegations in Redding's 2023 complaint which pertain to the various defendants' purported wrongdoings are related to time frames occurring prior to the filing of his 2021 complaint. The allegations could have been included in that complaint, which was filed in December 2021. This court's judgment and opinion in *Redding I*, 2023-Ohio-884 (11th Dist.), was final and rendered upon the merits; both that action and the underlying action involve the same parties; the claims in the underlying action were or could have been raised in the first action; and both the first and the second actions were premised upon the same transactions or occurrences. We accordingly hold the trial court did not err in concluding the claims in the second complaint were barred by res judicata.

{¶36} Redding's first assignment of error lacks merit.

{¶37} Redding's second assignment of error provides:

> The court committed prejudicial error by: (1) finding appellant's conduct was frivolous without setting or holding required hearing per R.C. 2323.51(B); (2) finding appellant's

"pre-Second Suit" conduct relevant in finding his conduct was objectively frivolous; and (3) finding appellant's conduct was objectively frivolous claiming the claims or issues are barred by res judicata.

{¶38} Under this assignment of error, Redding appears to take issue with several actions by the trial court. First, he challenges the trial court's premature finding of frivolous conduct, filed on March 7, 2024. Next, Redding asserts the trial court was not permitted to consider his conduct which occurred prior to the filing of his October 17, 2023 complaint. Finally, Redding declares the trial court erred when it concluded that his claims were not warranted under existing law because, in the preamble to his complaint, he made the ipse dixit declarations that his claims were not barred by res judicata.

{¶39} The third point is moot by virtue of our resolution of Redding's first assignment of error. And, more importantly, Redding fails to make a coherent argument that his claims in the underlying complaint were somehow warranted under existing law. He merely suggests that because the claims were not actually litigated, they are subject to further court inquiry and examination. As previously emphasized, the claims were alleged in the original complaint; the claims were alleged against the same parties; the claims were either disposed of or could have been argued in the first complaint; and all of the claims in the second complaint relate to USPA's (and other named defendants') behavior which had a common, if not replicated, "cloned," or repeated nucleus of operative facts.

{¶40} Regarding Redding's first contention, the trial court acknowledged its error in concluding his conduct was frivolous. It is clear the trial court determined Redding's

Case No. 2025-G-0010

conduct was frivolous in its March 7, 2024 order. Redding, however, filed a motion for relief from judgment, pursuant to Civ.R. 60(B), which the trial court granted.[1]

{¶41}  In its order, entered on September 11, 2024, the trial court admitted it was inappropriate to conclude Redding's conduct was frivolous without first holding a hearing. The trial court determined an evidentiary hearing was necessary to resolve the issues of whether Redding acted frivolously and, if so, what sanctions might be proper. A full and fair hearing was held on November 14, 2024, in which the parties had the opportunity to present evidence. Redding's argument pertaining to the trial court's premature determination is therefore moot.

{¶42}  Redding's final point, that the trial court committed error by considering his "pre-Second Suit" conduct, is also without merit. The evidence presented at the frivolous conduct hearing had no bearing on the merits of Redding's claims in the underlying complaint. That issue was addressed in the trial court's dismissal order. Nevertheless, Redding's conduct prior to the filing of the underlying 2023 complaint is probative of whether his actions were frivolous. *See Hicks v. Cadle Company*, 2019-Ohio-5049, ¶ 117 (11th Dist.) (The "historical timeline of events does provide competent, credible evidence to support the trial court's determination that filing the counterclaim was frivolous conduct . . . .").

---

1. The trial court's order was not final or appealable because the issues of sanctions/fees were still pending. *Redding v. United States Parachute Association*, 2024-Ohio-1651, ¶ 5. ("[T]he trial court's March 7, 2024 judgment awarded attorney fees to appellees but deferred the amount to be determined at a later hearing. Until the attorney fees amount is determined, all matters before the trial court have not been resolved. Therefore, this judgment is not a final appealable order.") Accordingly, while the Civ.R. 60(B) motion was an improper vehicle (because it contemplates relief only from final orders, *see, e.g., Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 380 (1981)), Redding's motion was duly contemplated as a motion for reconsideration of an interlocutory order.

Case No. 2025-G-0010

{¶43} R.C. 2323.51 governs the determination of frivolous conduct. "Frivolous conduct" means various things, not the least of which involve conduct that "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." R.C. 2323.51(A)(2)(a)(ii). And frivolous conduct includes "allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." R.C. 2323.51(A)(2)(a)(iii).

{¶44} Each of the foregoing statutory subsections demonstrate that "pre-Second Suit" conduct are appropriate for a court to consider. Under subsection (A)(2)(a)(ii), the trial court's determination that Redding's claims in the underlying suit were barred by res judicata, which we affirm, demonstrate that Redding's conduct was not warranted under existing law and cannot be supported by good faith argument. This is because the underlying complaint was essentially duplicative of the first complaint, or it included facts that could have been raised in the first complaint, i.e., "pre-Second Suit" conduct.

{¶45} Similarly, under subsection (A)(2)(a)(iii), evidence is required to support a lawsuit. Without evidentiary support, there is no possibility of prevailing on a claim. In this respect, via the application of claim preclusion, Redding lacked any evidentiary support to advance the underlying complaint (irrespective of discovery) because the facts had been previously asserted or could have been asserted in the first lawsuit. In effect, he had no evidentiary basis to support the filing of the underlying claim, and his allegations were either redundant or merely recycled attempts to reanimate previously determined claims under different theories which could have been asserted in the first action.

**{¶46}** Considering these points, we also emphasize that other appellate courts have held that filing a complaint barred by res judicata is frivolous conduct as a matter of law because it is not warranted under existing law. *See Mack v. Asset Acceptance, L.L.C.*, 2008-Ohio-5108, ¶ 40 (5th Dist.); *Cincinnati Ins. Co. v. Oancea*, 2005-Ohio-4872, ¶ 22 (6th Dist.); *Sain v. Roo*, 2001-Ohio-4115, ¶ 18 (10th Dist.). These courts have, by implication, held that conduct prior to the filing of an underlying action may or even must be considered. We therefore hold the trial court did not err in considering Redding's "pre-Second Suit" conduct when it ruled on the issue of his frivolous conduct and USPA's motion for sanctions.

**{¶47}** Redding's second assignment of error lacks merit.

**{¶48}** Redding's third, fourth, and fifth assigned errors shall be addressed together. They provide:

> [3.] The court committed prejudicial error by restricting the November 14, 2024 hearing to a "sole" issue.
>
> [4.] The court committed prejudicial error by using appellee's witness's "unsworn statements" as evidence in the matter – which violated: (1) R.C. § 2317.30; (2) Civ.R. 43(D); (3) Evid.R. 603; and (4) Evid.R. 802, thus impacting the ruling.
>
> [5] The court committed prejudicial error by considering statements made to police, criminal investigators, and others inadmissible as allegedly NOT proving the truth of appellant's statements to police, criminal investigators, or others.

**{¶49}** Under these assigned errors, Redding maintains the trial court committed prejudicial error by limiting the November 11, 2024 frivolous conduct/sanctions hearing to the issue of his frivolous conduct. He additionally claims that the trial court similarly erred using witness' statements as evidence and determining statements made to law enforcement were inadmissible to establish the truth of his claims.

{¶50}  Regarding the first point, Redding alleges the trial court erred when it stated the sole issue before the magistrate was whether Mr. Redding's conduct in the instant suit was frivolous. Redding takes issue with this because, he maintains, this statement implies the trial court did not engage in the requisite "three-step analysis" for determining sanctions under R.C. 2323.51. We disagree.

{¶51}  As Redding points out, "A motion for sanctions under R.C. 2323.51 requires a three-step determination. First, did an individual engage in frivolous conduct. Second, if the conduct was frivolous, was another party adversely affected by the frivolous conduct. And third, the amount of award, if any." *Keith Harper v. Lake Hosp. Sys., Inc.,* 2017-Ohio-7361, ¶ 27 (11th Dist.). The trial court's statement, however, does not imply it failed to engage in this inquiry. To the contrary, in overruling Redding's objections to the magistrate's decision, the trial court found that his conduct was frivolous, the second suit was barred by res judicata (implicitly concluding that the defendants were harmed by having to defend the previously adjudicated matters), and the defendants were awarded $45,419.56 in sanctions for the cost of defending the frivolous suit.

{¶52}  Next, Redding argues that the trial court erred in allowing counsel to testify at the November 14, 2024 hearing. He claims that "[t]he court did NOT swear in appellees' witness, counsel Mr. Tyler Tarney, as to attorney fees, and other reasonable costs." Redding maintains that the court committed prejudicial error by using counsel's unsworn statement as evidence in violation of R.C. 2317.30, Civ.R. 43(D), Evid.R. 603, and Evid.R. 802.

{¶53} The trial court overruled this objection to the magistrate's decision, concluding "[w]hen [an] objection is not made at trial to the failure to swear witnesses, the

objection is waived." Citing *Stores Realty Co. v. Cleveland Bd. of Bldg. Stds. & Bldg. Appeals*, 41 Ohio St.2d 41 (1975). In *Stores Realty*, the Ohio Supreme Court held that "unsworn testimony is competent evidence, where the opposing party is represented by counsel who neither requests that the witness be sworn nor objects to the testimony." *Id.* at 42. While *Stores Realty* may be good law under applicable circumstances, we need not apply its holding in this case.

{¶54} In *R.C.H. Co. v. 3-J Machining Serv.*, 2004-Ohio-57, ¶ 25 (8th Dist.), the Eighth District noted that evidence establishing the reasonableness of requested attorney fees "may take the form of testimony, affidavits, answers or other forms of sworn evidence. As long as sufficient evidence is presented to allow the trial court to arrive at a reasonable attorney-fee award, the amount of the award will not be disturbed absent an abuse of discretion." This statement of law is persuasive.

{¶55} On November 18, 2024, after the frivolous conduct/sanctions hearing, an affidavit was submitted by the senior counsel of the law firm representing the party defendants. In the affidavit, counsel attested to the hourly rate charged and the amount spent on defending the underlying litigation, i.e., $45,419.56. We conclude that this is competent evidence, considering the surrounding facts and testimony adduced at the hearing, to support the trial court's decision on sanctions. Redding's argument lacks merit.

{¶56} Finally, Redding argues that the trial court erred in concluding that "statements made to police and others . . . do not establish the truth of his statements." Redding seems to assert this is error because certain testimony or documentation he submitted to the police and other investigators support his claim of fraud.

Case No. 2025-G-0010

{¶57} Initially, Redding's ancillary claim of fraud is premised upon his belief that he was a USPA member when he was not renewed and was not afforded the rights of a member pursuant to the USPA Governance Manual. As analyzed under his first assignment of error, this court has determined, with finality, that Redding was a non-member when USPA declined to renew his membership. Redding does not like this conclusion. It, however, is inevitable, conclusive, and a *final ruling* on this issue.

{¶58} Redding's attempt to utilize reports made to law enforcement or similar such conversations with law enforcement as a basis to establish his fraud claim at the frivolous conduct/sanctions hearing was improper. The narrow issues at the hearing were whether Redding's conduct was frivolous, despite his reports and conversations with law enforcement pertaining to "belief" that the party defendants had somehow defrauded him. The content of Redding's interactions with law enforcement are, at best, coincidental and only demonstrate he initiated the interactions. In short, these interactions do not support the veracity of Redding's claims.

{¶59} We therefore agree with the trial court that Redding's statements to law enforcement and the statements to Redding by law enforcement do not establish the truth or prove the matters Redding sought to establish.

Case No. 2025-G-0010

{¶60}  Redding's third, fourth, and fifth assignments of error are without merit.

{¶61}  For the reasons discussed in this opinion, the judgments of the Geauga County Court of Common Pleas are affirmed.

ROBERT J. PATTON, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2025-G-0010

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgments of the Geauga County Court of Common Pleas are affirmed.

Costs to be taxed against appellant.

_____
JUDGE EUGENE A. LUCCI


_____
PRESIDING JUDGE ROBERT J. PATTON,
concurs


_____
JUDGE MATT LYNCH,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-G-0010